C. KATHRYN QUILLEN, Appellee, v. W. E. LESSENGER, Appellant.

NEW TRIAL: Irrelevant and Inflammatory Statements to Jury. Irrelevant assertions in opening statement to the jury, though highly inflammatory, do not *necessarily* constitute reversible error.

**NEW TRIAL: Irrelevant Cross-Examination.** A cross-examination
2  which, over the protest of the other litigant, deals in irrelevant
and highly inflammatory matters, constitutes reversible error, es-
pecially when the court permits such matters to be traversed.

**EVIDENCE: Relevancy, Materiality, and Competency.** In an action
3  for damages to plaintiff's nervous system, consequent on a physical
encounter between plaintiff's husband and the defendant, testi-
mony of defendant's violent conduct and profane and indecent
language on a separate occasion and toward strangers to the action
is wholly incompetent (1) to prove damage to plaintiff, or (2) to
furnish basis for impeachment of the defendant.

**TRIAL: Instructions—Abstractly Correct But Erroneous Under Record.**
4  An instruction which is free from error as an abstract proposition
may be highly prejudicial when read and applied in the light of a
record containing highly inflammatory and incompetent evidence.
So held as to instructions relative to punitive damages.

*Appeal from Henry District Court.*—OSCAR HALE, Judge.

FEBRUARY 8, 1921.

ACTION at law to recover damages resulting from defend-
ant's alleged wrongful and malicious conduct while trespassing
on plaintiff's premises. Verdict of jury in favor of plaintiff for
$999. Defendant appeals.—*Reversed.*

*Roberts & Webber,* for appellant.

*J. C. McCoid,* for appellee.

DE GRAFF, J.—The petition alleges that the defendant, Dr.
W. E. Lessenger, entered the premises occupied by the plaintiff
and her husband as a home, on Sunday evening, March 18, 1918,
with a malicious and wrongful intent to abuse and assault plain-
tiff's husband; that he did at said time and place curse, assault,
and bruise plaintiff's husband in the presence of plaintiff; that
he also broke a window in plaintiff's home, with the malicious
intent of terrorizing the plaintiff; that, by reason of said con-
duct, plaintiff suffered great mental pain and physical injury
and damages in the sum of $5,000. Defendant answered by a
plea of general denial.

Both plaintiff and defendant are residents of Mt. Pleasant, Iowa, where the incidents of this action occurred. Plaintiff's husband is the manager of the local telephone company. The defendant is a physician and surgeon, with a large and lucrative practice, and it was his custom to send his patients to the St. Francis Hospital at Burlington, as his home city had no suitable hospital facilities. At the time in question, six or seven of his patients were in said hospital, two of whom had been operated on the day before. The defendant's niece was also under treatment in said hospital at that time, and one of his patients was in a serious condition. The defendant, during the afternoon of the day in question, had tried to secure telephone connections with the hospital, to learn the condition of his patients, and it appears that, on account of the operations recently performed, he was very anxious to learn the results thereof, believing that it might be necessary for him to go to Burlington.

From about 4 o'clock in the afternoon until 6, he was unable to secure telephone connections, and, by reason of the repeated calls, both defendant and the girl in charge of the central office reached a point where "forbearance ceased to be a ·virtue," and, after defendant had used some objectionable language, "central cut out his phone and refused to answer his calls."

One of the printed rules of the telephone book read:

"Report all trouble to the chief operator or manager. Let us have your first complaint."

In compliance with this rule, as claimed by defendant, he was driven, about 9 o'clock, to the home of the plaintiff, for the purpose of getting his phone connected, or making some arrangement whereby he could communicate with his Burlington patients. Upon arrival, he told Mr. Quillen his mission, and, after some conversation, a fight ensued outside the house. The plaintiff, while not outdoors during the time of the altercation and alleged assault, became frightened, and claims to have received a permanent injury to her nervous system.

The errors assigned for a reversal are: (1) Prejudicial statements of plaintiff's counsel in his opening statement to the jury; (2) the admission in evidence of statements claimed to have been made by defendant by telephone to the operator on

the afternoon in question; (3) prejudicial misconduct of counsel in argument to the jury; (4) refusal to give certain instructions requested by the defendant.

I.   Frequently a little poison is injected into the record, on the trial of a case, by the side remarks of counsel, by the asking of an improper question with a concealed yet revealed answer therein, in the argument of facts *de hors* the record,—and, perchance, no prejudicial error results. In the instant case, however, a toxic dose was administered. The initial words of plaintiff's counsel in the opening statement were:

*1. NEW TRIAL: irrelevant and inflammatory statements to jury.*

"We will show you that she [meaning Mrs. Quillen] heard that this defendant went down to the drug store with a knife in one hand and with a revolver in the other."

At this point, counsel for defendant interposed a proper objection.

Plaintiff's counsel continued:

"We will show you that Mrs. Quillen heard that another night he called up the telephone girls and threatened to come over and cut their throats, and had started down the steps and was stopped by an officer at the foot of the steps."

At this point, further objections were made by defendant, whereupon the court remarked: "Counsel should hold himself within what he may be able to prove on the trial."

We would not reverse on this ground alone, but it would have been proper for the trial court to have admonished plaintiff's counsel, and to have instructed the jury at that time to give no consideration to the statements made.

Upon the cross-examination of the defendant, the following record was made:

*2. NEW TRIAL: irrelevant cross-examination.*

"Q.  You used a little profane language over the telephone just a little before noon on that Sunday? (Objected to as incompetent, irrelevant, and immaterial, and not proper cross-examination.)

"Court:  What pertains to Mr. Quillen or the defendant, or any communication between them or any knowledge of the conduct, as showing their relation, may be competent. I rather think that the question can be answered."

The question was then repeated: and, as preliminary to the

objection to be made, defendant's counsel asked permission to interrogate the witness, which was granted. This question was then asked:

"Did you have a conversation with Mr. Quillen over the phone during that afternoon, or did you know that you were talking to him or in his presence that afternoon?"

Objection to this question was interposed by plaintiff's counsel, which the court sustained. The original question was then reread, to which the witness answered:

"I don't think so. I don't consider I used any profane language to the girls. I said, 'It beats hell that I can't get any service.' I may have said, 'Damn it.' Q. Didn't you say to the telephone operator, 'I know you, you damned whoring bitch?' "

To this question proper objections were made and overruled. The witness answered:

"No, sir. Never used that kind of language to her."

The question was then repeated, directing the attention of the witness to such statements on two different occasions on the afternoon in question, to which the witness answered in the negative.

On rebuttal, plaintiff introduced the telephone operator, who was permitted to testify, over objection, that the defendant in the telephone conversation had called her "an old whore" and "an old hussy." Defendant moved to strike out the answers given, for the same reason stated in the objection; and the motion was overruled.

Sufficient record has been quoted to indicate the prejudicial character of this cross-examination. It is not permissible under the guise of cross-examination to permit a party to elicit immaterial and collateral matters from the witness, and then traverse same on a theory of rebuttal. Furthermore, the impeachment of a witness cannot be predicated on immaterial matters, and it is quite apparent that the testimony in question did not in any way define, characterize, or limit the primary fact in issue. The language may have been a basis for an action in slander, but Mrs. Quillen would not have been the complainant.

II. The court, in instructions, did not limit the effect of this testimony, and refused to give requested instructions asked

by the defendant which did embody certain limitations, to wit:

3. EVIDENCE:
relevancy, ma-
teriality, and
competency.

That the objectionable or obscene language alleged to have been spoken by the defendant (1) is not competent to impeach the testimony of the defendant, (2) is not competent to prove the extent or amount of the damages which plaintiff is entitled to recover, if any, in this action, and (3) is not competent to prove that the defendant went to the plaintiff's home with the intent to do a wrongful act.

We are clearly of the opinion that this testimony was not competent, and that the objections to the questions should have been sustained in the first instance.

The court, in Instruction No. IX, told the jury that:

"Plaintiff in her petition asked exemplary or punitive damages, which are such as are allowed by way of punishment, where there is actual damage and the element of malice appears;

4. TRIAL: in-
structions: ab-
stractly correct,
but erroneous
under record.

and in such cases the jury is not limited to actual compensation, but, blending together the rights of the injured party and the interests of the community, they may render such verdict as will compensate for the injury, protect society, and at the same time inflict some punishment upon the defendant for his wrongful act."

In the succeeding paragraph, the jury was further told that, if they found that the plaintiff had sustained actual damages, and further found "that the defendant maliciously committed the assault, you are authorized, if you so find, to award such exemplary or punitive damages by way of punishment as you may find, from all the evidence under the facts in this case, should justly and rightly be awarded."

Under the above instruction, the jury was justified in believing that the defendant could be punished for any *wrongful conduct* of which the evidence showed he had been guilty, if they felt that this would be best for the "interests of the community," or to "protect society." The instruction as an abstract proposition is free from error, but when read and applied in the light of the incompetent evidence introduced, was very prejudicial to the defendant.

We need not comment upon the argument of plaintiff's counsel to the jury, as there will be no occasion for a repetition

of the language used therein, upon a retrial of this cause.  For the reasons stated, this cause must be and is—*Reversed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.