VYO LYNN, APPELLEE, v. THE CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

43 N. W. 2d 527

Filed July 24, 1950. No. 32771.

*Edward F. Fogarty, Edward Sklenicka, James M. Paxson*, and *Herbert M. Fitle*, for appellant.

*G. H. Seig*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This appeal arises out of the city of Omaha appropriating certain lands by condemnation for its use as an addition to its municipal airport. The lands so taken included a tract belonging to Vyo Lynn. Lynn appealed to the district court for Douglas County from the award of the board of appraisers which had fixed the value of his property taken at $6,750. Upon trial in the district court the jury fixed the value thereof at $11,625. From the overruling of its motion for new trial and the entry of judgment on the verdict, the City of Omaha appeals.

For the purpose of this opinion we shall refer to appellant as the city and to appellee as Lynn.

Admittedly the city took an improved tract of land belonging to Lynn. It was located north of Fort Street and south of the Missouri River levee and contained somewhere between 16.06 and 19 acres. It was north of and immediately adjacent to the city's airport.

In the trial to determine the amount which Lynn was entitled to receive because of the taking the city contends the court erred when, over proper objection as to foundation, it admitted the testimony of Charles Bahm as to what the city had paid him for his property in 1941 when it purchased it for municipal airport pur-

poses and its subsequent refusal to give the city's requested instruction No. 4 to the effect that the jury should not consider this evidence in determining the fair market value of the property taken.

The land which the city purchased from Bahm in 1941 for airport purposes is just south of the Lynn land and of a sufficiently similar character that if it could be said that it was a sale in the open market it was admissible under the rule as announced 'in Langdon v. Loup River Public Power District, 142 Neb. 859, 8 N. W. 2d 201. Therein we said: "It seems that there could be no better evidence of the true market or going value of land than the price paid for other, similar and similarly situated land sold at about the same time when, by evidence, it is shown that the price so paid for the other lands depended upon market or going value rather than other considerations."

Bahm was asked: "* * * what price did the City of Omaha pay you for your 5 acres of land when they bought it in 1941?" Over proper objection he was permitted to answer and testified: "$1000 an acre."

We held in State v. Wright, 105 Neb. 617, 181 N. W. 539: "* * * it is the universal rule that sales of similar lands cannot be shown where such sales had not been entirely voluntary. Sales made to the state as a part of a tract, which is sought to be acquired by condemnation in case purchases cannot be made, are not considered of such a voluntary character as will truly reflect the reasonable or market value of the land sold and, therefore, cannot, upon any theory, be shown in evidence as having a bearing upon the value of the land under condemnation. Oregon R. & N. Co. v. Eastlack, 54 Or. 196; United States v. Beaty, 198 Fed. 284; Spring Valley Water Works, v. Drinkhouse, 92 Cal. 528; City of San Luis Obispo v. Brizzolara, 100 Cal. 434; South Park Commissioners v. Ayer, 237 Ill. 211; State v. Superior Court, 55 Wash. 64; Coate v. Memphis R. T. Co., 120 Tenn. 525; note, 43 L. R. A. n.s. 985. Individual sales throw no

light on market values if in any sense compulsory, or when the vendor is not given opportunity to indefinitely hold his property and invite competition among all who should desire to become purchasers.

"Mr. Lewis, in his treatise on Eminent Domain (3d ed.) sec. 667, says: 'What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such a price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it cost more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise.' "

As stated in Papke v. City of Omaha, 152 Neb. 491, 41 N. W. 2d 751: "In condemnation proceedings where the market value of real estate is in issue, evidence of prices paid by a condemner therefor is inadmissible in like proceedings involving other land, for the reason the same do not furnish a criterion for market or going value of land being condemned."

The evidence received was not admissible and it was error to admit it.

The city further contends that the utility or availability of the property for the special purpose of the condemner cannot be considered in determining market value if the taker is the only person who can use the property for that purpose and that the court erred when it refused to give its requested instruction No. 3.

This requested instruction is as follows: "You are

further instructed that in this proceeding plaintiff is entitled to the market value of property taken for the use to which it may be most advantageously put and for which it would sell for the highest price in the market, but you are not entitled to base your award of damages upon your estimate of the value of this real estate for enlargement of the airport."

As stated in Minneapolis-St. Paul Sanitary District v. Fitzpatrick, 201 Minn. 442, 277 N. W. 394, 124 A. L. R. 897: "The market value of: property taken in condemnation is not measured by the benefits to, or needs of, condemnor. The question is, What has the owner lost? not, What has the taker gained?" Therein the court, by quoting from Stinson v. Chicago, St. P. & M. Ry. Co., 27 Minn. 284, 6 N. W. 784, goes on to say: " 'No reason can be given why property taken under the eminent domain by a railroad company, or for any public purpose, should be paid for at a rate exceeding its general value—that is to say, its value for any purpose. Any use for which it is available, or to which it is adapted, is an element to be taken into.account in estimating .its general value. But where a condemnation is sought for the purposes of a railroad, to single out from the elements of general value the value for the special purposes of such railroad, is in effect to put to a jury the question, what is the land worth to the particular railroad company, rather than what is it worth in general? The practical result would be to make the company's necessity the landowner's opportunity to get more than the real value of his land.' " See, also, State v. Platte Valley Public Power and Irrigation District, 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196.

As stated in Olson v. United States, 292 U. S. 246, 54 S. Ct. 704, 78 L. Ed. 1236: "Value to the taker of a piece of land combined with other parcels for public use is not the measure of or a guide to the compensation to which the owner is entitled."

And in United States v. Chandler-Dunbar Water

Power Co., 229 U. S. 53, 33 S. Ct. 667, 57 L. Ed. 1063: "But in a condemnation proceeding, the value of the property to the Government for its particular use is not a criterion. The owner must be compensated for what is taken from him, but that is done when he is paid its fair market value for all available uses and purposes."

This rule should not be confused with the rule as stated in Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168, as follows: "The market value of property includes its value for any reasonable use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which made up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating compensation. The proper inquiry is, what is its fair market value in view of any reasonable use to which it may be applied and all the reasonable uses to which it is adapted? The correct rule is as stated in Alloway v. Nashville, 88 Tenn. 510, 13 S. W. 123: ' "* * * witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market?" Lewis, Eminent Domain, sec. 479.' "

While it is true that the court sustained the city's objections to questions as to value based upon its use by the city as an airport, however, in view of the form of the questions asked, the fact that Bahm was permitted to testify as to what the city paid him for his land which the city acquired for airport purposes and the fact that

the jury was permitted to view the premises, we find the court should have given an instruction properly cautioning the jury in regard thereto.

The city also contends that the trial court should submit to the jury only a plain statement of the facts as to the issues that are to be determined. This contention relates itself to the issue raised by the pleadings that the proceedings were null and void because the city council of the city of Omaha appointed as the chairman of the board of freeholders to appraise the property being taken by the city one George T. Morton who, at that time, was a member of the city planning commission of the city of Omaha and because of that fact not a disinterested freeholder as provided for in such cases by the charter provisions of the city. This issue was contained in instructions Nos. 1, 2, and 3 given by the court.

As stated in Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168: "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired."

The issue so raised did not present a question for the jury but one of law for the court. It should not have been included in the instructions as it was wholly immaterial to the issue which the jury was to determine. It should not be included when the matter is again presented to the jury.

The city makes two other contentions: First, that the verdict is excessive, and second, that interest should not be allowed on an award when, after the award is made, the owner retains possession. Neither of these questions may again arise on the retrial which we find is necessary. In view thereof it would not be proper for us to answer them now.

For the reasons hereinbefore stated there must be a

retrial. The judgment and verdict are therefore vacated and set aside and the judgment reversed and the cause remanded for a retrial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.