IN RE PETITION OF OMAHA PUBLIC POWER DISTRICT. WALLACE SUMP ET AL., APPELLEES, V. OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION, APPELLANT.

95 N. W. 2d 209

Filed March 6, 1959. No. 34492.

*Fraser, Wenstrand, Stryker, Marshall & Veach* and *Albert C. Walsh,* for appellant.

*Eisenstatt & Lay,* for appellees.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAP-PELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action by the Omaha Public Power District to acquire by condemnation, through the power of eminent domain, an easement for an electric power transmission line across certain lands in Douglas County belonging to Wallace and Elaine Sump. From a verdict and judgment in favor of the Sumps for damages in the amount of $8,000 the power company has appealed.

The Sumps are the owners of the north half of the northwest quarter of Section 5, Township 14 North, Range 12 East of the 6th P. M., in Douglas County, Nebraska. The Sumps also own other land contiguous to the above-described property, the total acreage in the two tracts being approximately 96 acres. The easement crosses the southwest corner of the Sump lands. The easement was obtained for the purpose of crossing the corner of the Sump lands with a 161,000 volt transmission line, there being no poles, towers, or structures of any kind occupying any portion of the land. The minimum clearance of the transmission line in the center of the span between supporting structures is 29 feet at 120 degrees Fahrenheit. An easement for the right-of-way was taken for 35 feet on each side of the center

line and an additional 15 feet on each side thereof for the right to trim or fell trees and remove obstructions within 50 feet of the center line of the right-of-way which would be a hazard to the transmission line. The area contained in the 70-foot right-of-way amounts to .267 of an acre. The area contained in the 30 feet taken to protect against trees and obstructions amounts to .114 of an acre. The corner of the Sump lands separated from the main tract by the easement contains .023 of an acre. The excessiveness of the judgment is not assigned as error. Errors in the admission of evidence and in the court's instructions to the jury are assigned as constituting prejudicial error.

The power company contends that instruction No. 8 is prejudicially erroneous. The instruction states: "The measure of damages for land condemned for public use is the difference in the fair and reasonable market value of the land before and after the taking. The value of the land taken by eminent domain is not limited to the value of the land for the purposes for which it is actually being used at the time of the taking, but you may consider all uses to which it is adapted and might be put and will award compensation upon the basis of its most advantageous and valuable use, having regard to the existing business activities or wants of the community or such as may reasonably be expected in the future." The assignment of error is directed to the words "or such as may reasonably be expected in the future." The contention is that this part of the instruction permits a recovery for a future use that is too remote and has no probative value in determining the reasonable market value of the land at the time it was damaged.

We point out that the present case involves the taking of an easement for a right-of-way, and does not involve the actual taking of land. The measure of damages in such a case is the difference in the reasonable market value of the land before and after the taking of

the easement. Dunlap v. Loup River Public Power Dist., 136 Neb. 11, 284 N. W. 742, 124 A. L. R. 400; Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417. In determining the fair and reasonable value of land before and after it is damaged by a taking of an easement under the power of eminent domain it is proper for the jury to consider the purposes for which it was being used at the time it was damaged, and all uses for which it is adapted and might be put, and award compensation upon the basis of its most advantageous and valuable use. The evidence that is proper to be considered in establishing such value is discussed in Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168, as follows: "The court properly admitted evidence of the nature of the community and its development into acreage or small tracts for country or suburban homes and the adaptability of the land in question for that purpose. The market value of property includes its value for any reasonable use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which made up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating compensation. The proper inquiry is, what is its fair market value in view of any reasonable use to which it may be applied and all the reasonable uses to which it is adapted?" See, also, Quest v. East Omaha Drainage Dist., supra; State v. County of Cheyenne, 157 Neb. 533, 60 N. W. 2d 593.

The evidence, however, must be limited to the adaptability of the land for uses that may be reasonably expected in the immediate future. In 18 Am. Jur., Eminent Domain, § 244, p. 880, the rule is stated as follows: "In other words, the owner is to be given, by way of compensation for his land, its fair price for any use for which it has a commercial value of its own in the immediate present or in reasonable anticipation in the near fu-

ture." See, also, 29 C. J. S., Eminent Domain, § 160, p. 1024. The adaptability for uses which may be considered must be so reasonably probable and so reasonably expected in the immediate future as to affect the market value of the land at the time the land is taken or damaged. There is a clear distinction between what land may be worth in the future and what it is worth at the time it was taken or damaged in view of the future. The fundamental issue is the reasonable market value of the land immediately before and immediately after it is taken or damaged.

The trial court by instruction No. 8 informed the jury that it could consider any use to which the land was adapted or could reasonably be expected in the future. It permits the jury to speculate upon the value of any reasonable use to which the land might be put at any time in the future. The time element is an important one and it must be limited to the immediate future, otherwise the jury is permitted to consider evidence which is too remote to have any probative value in fixing the reasonable market value of the property at the time it was damaged. The propensity of juries to return maximum verdicts in this type of case necessitates that evidence of adaptable uses be properly limited to reasonable uses in the immediate future. The instruction fails to properly limit the consideration of future uses for which the land is adaptable and constitutes prejudicial error.

The power company complains of error in instruction No. 11. The assignment of error is directed to the last sentence of the instruction, which states: "The damages are not to be reduced by reason of the fact that the Omaha Public Power District may or does permit the landowner to make some use of the condemned premises after condemnation." In view of the fact that no land was actually taken in the instant case, the quoted portion of the instruction is confusing and misleading. It should have stated, if it was to be given at all, that

the damages are not to be reduced by reason of the fact that the Omaha Public Power District may or does permit the landowner, after the condemnation, to make some use of the right-of-way actually taken. The Sumps as the owners of the fee title after condemnation were entitled as a matter of right to make any use of the premises which did not conflict with the terms of the easement acquired in the condemnation proceeding.

The power company assigns as error the admission in evidence of an offer to purchase the entire tract of land for $1,000 per acre prior to the commencement of the condemnation proceeding. Objection was duly made to this evidence, which objection was overruled. The evidence was improperly admitted. The rule is: In proving the value of property it is improper to admit testimony of an alleged offer of a particular price for the property as tending to show its value. Stewart v. James, 1 Neb. (Unoff.) 507, 95 N. W. 778; 31 C. J. S., Evidence, § 182 (c), p. 887; 20 Am. Jur., Evidence, § 375, p. 341.

The power company also asserts that the trial court erred in permitting, over objection, the testimony of witnesses as to their opinions as to the value of the property for use as a filling station. In this respect one witness was permitted to testify that the corner was worth $14,000 as a filling station site. Sump was permitted to state that the corner was worth $15,000 as a filling station site. The evidence was erroneously admitted. The rule is: Witnesses should not be allowed to give their opinion as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown as well as its availability for any particular use. If it has a peculiar adaptation for certain uses, this may likewise be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. Where these facts and circumstances are shown, the

only question as to value that is properly in issue is the reasonable market value at the time the property is taken or damaged. Langdon v. Loup River Public Power Dist., *supra;* Lynn v. City of Omaha, 153 Neb. 193, 43 N. W. 2d 527; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328. We conclude that the trial court erred in admitting the evidence as to the value of the property for use as a filling station.

The Sumps contend that the power company cannot complain of the admission of the evidence because it adduced similar evidence in its case-in-chief. The power company did elicit such evidence in its case-in-chief. Ordinarily a party may not successfully complain of the introduction of evidence of a like character to that which it subsequently introduced. George A. Hoagland & Co. v. Scottish Union & National Ins. Co., 131 Neb. 112, 267 N. W. 242; Allen v. Massachusetts Mut. Life Ins. Co., 149 Neb. 233, 30 N. W. 2d 885. See, also, 5 C. J. S., Appeal & Error, § 1506(c), p. 894; 5A C. J. S., Appeal & Error, § 1735, p. 1028. The foregoing position is the correct one. In view of the fact that a new trial is required on other grounds, we have discussed the objection only to avoid error on the retrial.

The power company asserts that the trial court erred in permitting the plaintiffs on cross-examination over objection to elicit testimony concerning the location of the line and the possibility of locating it elsewhere. This evidence is clearly erroneous and the objections thereto should have been sustained. The matter of the location of the line is not an issue. The only issue is the amount of compensation to be paid the landowner for the taking or damaging of his property.

We do not deem it necessary to determine other questions raised by the appeal. For the reasons stated, the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

MESSMORE, J., participating on briefs.