WALTER R. LYBARGER ET AL., APPELLEES, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT.

128 N. W. 2d 132

Filed May 8, 1964. No. 35467.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, A. A. Christensen, James F. Petersen, and James J. Duggan, for appellant.

Wagener & Marx, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an eminent domain proceeding which was instituted by the State of Nebraska, Department of Roads, as condemner, against the condemnees, Walter R. Lybarger and Mabel H. Lybarger.

The condemner appealed from the award of the board of appraisers to the district court for Lancaster County. In that court the Lybargers, as condemnees, were designated as plaintiffs and the condemner, State of Nebraska, Department of Roads, as defendant. The parties will be referred to herein as they were designated in the district court, and when the plaintiff is mentioned in the singular, the reference is to Walter R. Lybarger. At times the defendant will be designated as the State.

The action in district court was to determine the

amount of damages to be awarded the plaintiffs for 13 lots together with parts of 5 other lots taken from them by the State for the construction of a portion of the Interstate Highway System, together with certain restrictions of exit from some of the areas affected. The premises taken were located in Blocks 17 and 16 in Belmont Addition to the City of Lincoln, Nebraska. Three of the lots were situated in a commercial zone of said city and had business properties located thereon, and the others were zoned in residential districts including four residences and a portion of another residence  The lots in Block 16 were unimproved but used for parking of automobiles.

The jury returned a verdict for the plaintiffs in the amount of $63,500 and judgment was entered thereon. The defendant's motion for a new trial having been overruled, the State brings the cause here on appeal.

It assigns errors to the trial court which, insofar as they need to be considered by this court, are that the court erred: In overruling defendant's motion for mistrial after the opening statement of plaintiffs' counsel; in permitting the witness, Karl A. Witt, to testify concerning the value of the land taken for the specific purpose of assembling it with surrounding lands; and in overruling defendant's motion to strike the opinion of William R. Swearingen for the reason that opinion included noncompensable elements.

The portions of the opening statement to the jury which the defendant maintains contains the objectionable and prejudicial statements of counsel are set out in the bill of exceptions. This, with the objection first raised, will now be considered.

The statement sets forth at considerable length the purchase and development of the real property involved. It states: "The evidence will show this was all built up by the Lybargers. The Lybarger family, the father, mother and children, spent a great amount of time in filling this area.

"When they bought it there was only one little house, a little two room house, sitting on one of these lots. I don't know whether the evidence will show it, but the Lybargers moved into that house and completely worked it over. They raised the grade; they added more rooms on to the house, and lived there as a family unit for many years, until they moved across the alley into a little better house across the alley. The evidence will show that these lots they purchased, with the exception of that one house, were unimproved, except for some old shacks or buildings which were torn down. And houses were then built; four houses were built on these lots, or moved in on these lots. * * *

"The evidence, I think, will be undisputed that the property that is involved in this hearing was built up by the Lybargers until their net income, the net income was almost $5,500.00 a year. After the payment of taxes; after the payment of upkeep; and after the payment of their expenses on that property, they had $5,500.00 net income from that property.

"BY MR. CHRISTENSEN: Your honor, I'd like to object to the reference to the net income as being an improper item of evidence, and further, being an improper matter to state. An opening statement must reflect the evidence.

"BY MR. MARX: That's what our evidence is going to be, and it is a proper element.

"BY THE COURT: I better rule on it at this time. It is not a proper item or element at this time."

Counsel continued with a description of the lots taken and shortly thereafter stated: "The evidence will also show that on Lot 16 there was a house sitting, and only part of which—only part of it extended over on to this Lot 17 (indicating). The evidence will show that the State took that entire house, which they had no right to; they took and removed the entire house.

"BY MR. CHRISTENSEN: Again I object to what

the State had a right to do or not to do, as not proper in the opening statement.

"BY MR. MARX: Our evidence will show that.

"BY THE COURT: I agree with Mr. Christensen. Sustained."

Shortly thereafter, plaintiffs' counsel further proceeded over objection of the opposing attorney ending with the first demand for a mistrial. "Our evidence will be to the effect that this property had a valuation of from $125,000.00 to $150,000.00, and we will introduce evidence by disinterested witnesses that that is what that property was worth.

"There will also be evidence by individuals who were dealing on this property directly to the north, and there will be evidence introduced that for an area of less ground than what the State took from Mr. Lybarger, Mr. Lybarger was able to sell this remaining area for more than the State offered him for what they took.

"BY MR. CHRISTENSEN: Your honor, I object to this type of an opening statement. I think it is entirely without foundation, and is entirely without basis.

"BY THE COURT: Sustained.

"BY MR. CHRISTENSEN: On that basis, at this time I move for a mistrial.

"BY THE COURT: Overruled."

At the close of the opening statement, the defendant's counsel made another motion for a mistrial in the absence of the jury giving reasons therefore and ending as follows: "On that grounds, in addition to the others, at this time the State moves for a mistrial, and in the alternative moves the Court to withdraw a juror and continue the case."

The motion was overruled and no statement was made to the jury cautioning it to disregard any portion of the counsel's opening statement.

Opening statements are briefly referred to in section 25-1107, R. R. S. 1943, which reads in part as follows: "When the jury has been sworn the trial shall

proceed in the following order, unless the court for special reasons otherwise directs: * * * The plaintiff must briefly state his claim, and may briefly state the evidence by which he expects to sustain it."

Very few cases before this court have involved the opening statements. The only one which has any application to the cause before us is Yechout v. Tesnohlidek, 97 Neb. 387, 150 N. W. 199. There the court stated, "In making the opening statements to a jury, the plaintiff is entitled to 'briefly state his claim, and may briefly state the evidence by which he expects to sustain it.' Rev. St. 1913, sec. 7846. In all cases considerable latitude must be allowed in the statement of what the party 'expects' to prove. The fact that he may fail to establish the facts which he may have expected to prove does not necessarily establish the fact that the statement was intentionally false. The incidents referred to, even if not proved, were of a trivial matter, not material to a recovery, and we cannot conceive of any prejudice resulting therefrom."

Although the cited case held that considerable latitude should be allowed counsel in the opening statement, the clear implication of the language of the court is that a statement which is known to be false might be erroneous and prejudicial.

An opening statement is to advise the jurors concerning the question of fact involved, so as to prepare their minds for the evidence to be heard, and facts should not be stated which cannot be proved. See 29 Words & Phrases (Perm. Ed.), Opening Statement, p. 528.

In 53 Am. Jur., Trial, § 457, p. 359, we find this discussion applicable to the cause before us: "The courts recognize that proof frequently fails to come up to expectation; the tendency is therefore to permit counsel a reasonable latitude in stating to the jury the facts proposed to be shown. Hence, in the absence of substantial error, the action of counsel in good faith in referring in his opening statement to matters subsequently

not proved cannot be questioned. However, as soon as it can be demonstrated that they cannot be substantiated, such statements should be withdrawn. It is, of course, true that counsel in referring to matters which he subsequently does not attempt to prove may be guilty of inexcusable misconduct prejudicial to the opposing side, justifying, in the case of proper objection, a new trial or a reversal."

In 118 A. L. R. 543, there is an annotation of some length dealing with: "Reference by counsel in opening statement in civil case to matters which he does not attempt to prove as ground for new trial or reversal." Cases are there cited where appellate courts have refused to grant a new trial or a reversal; other cases are assembled on page 549 of the annotation where the new trial or reversal was granted in such a case. The instances cited vary greatly, some dealing with immaterial or irrelevant statements and others with opening statements where under varying circumstances there was no subsequent attempt to prove the substance of the statements in the evidence thereafter. In many instances the outcome in the cited cases turns on the timeliness of the objection, in others on the sufficiency of corrective instructions or admonitions given by the trial court.

Shafer v. H. B. Thomas Co., 53 N. J. Super. 19, 146 A. 2d 483, was a case where the defendant's counsel on the opening statement said that defendant, even though it denied liability, had made an offer to "pay her medical expenses plus a little bit more." Thereupon the plaintiff's counsel objected to the remarks but withdrew the objection after the court indicated that defendant's counsel had a right to make the statement. The New Jersey court, in considering the situation, stated: "Defendant's counsel admits he intended to submit no proof with reference to this statement. There is no justification for counsel to make such a statement. We deem such remarks to be improper. After the statement

was made, the trial court should have declared a mis-trial or should have strongly guarded the jury 'against the pernicious results through proper instruction * * *.' Patterson v. Surpless, 107 N. J. L. 305, 308 (E. & A. 1930). Generally, we note in 53 Am. Jur., Trial, § 457, page 359, that 'counsel in referring to matters (in his opening) which he subsequently does not attempt to prove may be guilty of inexcusable conduct prejudicial to the opposing side * * *.' "

In Maggio v. City of Cleveland, 151 Ohio St. 136, 84 N. E. 2d 912, the court set out the remarks of counsel saying: "A part of the quoted comments of counsel were highly objectionable not only because they injected into the case plaintiff's family of two children and a mentally sick husband, but because they included a graphic description of the incident allegedly responsible for the husband's mental derangement, neither of which matters had any relevancy to plaintiff's action to recover compensatory damages for physical injuries to herself." In stating its decision, the opinion concluded: "Without lengthening the opinion further, this court is unanimously of the view that because of the objectionable and improper matter included in the opening statement, which could well have been a factor contributing to the large amount of the damage award, coupled with the trial of the case to jurors, whose qualifications as fair and impartial jurors were open to serious question, the city's motion for a new trial should have been sustained. The failure to do so resulted in a denial to it of substantial justice." See, also, City of Shawnee v. Sparks, 26 Okl. 665, 110 P. 884; Quillen v. Lessenger, 190 Iowa 939, 181 N. W. 8, where the question was discussed but the judgment was reversed on other grounds; McCarthy v. Spring Valley Coal Co., 232 Ill. 473, 83 N. E. 957.

With these cases and the rules of law stated, we shall now discuss the cause before us. A considerable portion of the opening statement contained in the record

before us, much of which is not included herein, deals with the efforts of the plaintiffs and their children in slowly acquiring, improving, and building up the premises involved in the litigation over a period of 27 years. The purpose of the action, of course, was to determine the value of the real estate and improvements as they existed at the time of the taking on September 13, 1961. The State objects to this extended résumé of the work involved by the plaintiffs and their family, asserting that it was intended to create sympathy of the jury towards the plaintiffs, and that the manner of its acquisition and the difficulties encountered were no part of the question under consideration and were not determinative of value. Further, they contend even if these matters might have been shown to some extent by evidence, they were not a proper subject for a detailed and extended opening statement. Whether or to what extent under the circumstances they were improper or prejudicial is, in view of our decision, unnesessary for this court to determine.

There are, however, certain portions of the opening remarks of counsel to which our attention is impelled. Counsel stated unequivocally that the property was built up by the plaintiffs until their net income from that property was $5,500 a year after paying taxes, upkeep, and expenses on that property. After the attorney for the defense made objection, counsel stated: "That's what our evidence is going to be, and it is a proper element." The trial court sustained the objection to the statement but gave no admonition to the jury. It must be conceded this court, with the whole evidence before it, is now in a much more advantageous position than the trial court was at that time. It appears without question that plaintiffs' counsel introduced no evidence whatever of net income from the property. However, the testimony does show the gross rentals. It would appear they were less than the $5,500 figure asserted by their counsel as net, though there is evidence that they

exceeded $5,000 provided there were no vacancies. There was considerable evidence of substantial vacancies and the proof is wholly lacking as to the taxes, upkeep, or other expenses which constitute the other side of the ledger. In the brief of the plaintiffs on this aspect of the case, it is asserted rather naively that the counsel, believing the trial court had ruled evidence of net income inadmissible by its ruling, offered no further proof on this point and that the defendant had first elicited evidence of gross income. The plaintiffs later, however, covered the gross rentals quite completely.

Plaintiffs' counsel, immediately before the defendant's motion for a mistrial, stated positively that the plaintiffs' evidence would be to the effect that the property taken had a valuation of from $125,000 to $150,000, and that plaintiffs would introduce evidence by disinterested witnesses that that was what the property was worth. Only two witnesses aside from the plaintiff himself testified as to the value of the premises taken and the damage to the remainder. One, Karl A. Witt, a home builder and developer of property for both residential and commercial purposes, valued the premises at $80,000 at or about the time of the taking. His testimony was taken by deposition more than 4 months prior to the trial of the cause in district court. The other witness was William R. Swearingen, a real estate broker and appraiser, who testified concerning the value of the several tracts or lots and of the whole, and fixed the total value with damage to the remaining property at $81,630. A copy of his appraisal had been submitted to plaintiffs' counsel. It would appear without question the attorney for the plaintiffs knew the value these witnesses had placed upon the premises before making the opening statement and that those values did not approach $125,000 to $150,000.

Any lawyer engaged in trial work is well aware of the initial interest displayed by jurors when first informed of the cause which they are to determine. The whole

purpose of the proceeding was to fix the value of and damage to the premises of plaintiffs. Yet counsel proceeded at the opening of the trial to relate values of the property taken and asserted that independent witnesses would so testify concerning them when he knew or should have known they would not. In the present cause the plaintiff himself fixed values on the premises in excess of those stated by the two independent witnesses. These approached but did not quite attain the lower figure of $125,000 mentioned in the opening statement. The taking of evidence in the trial court extended over a period of 5 days, and what values were remembered and considered by the jurors and what effect the values asserted so positively by counsel at the opening of the trial had on the jurors cannot be told.

In the opening statement, counsel asserted that the State had no right to take a house on a certain Lot 16 that extended over on Lot 17. The evidence shows that a portion of this house was on the land taken but most of it was on the remaining premises of the plaintiffs. It appears from the evidence that the State sold the house for $193 to the plaintiffs who moved it to other property. Whether it could have lawfully been taken and the effect of the sale thereof back to the plaintiffs was a question to be directed to the attention of the court. It would either determine it as a matter of law or present any issue of fact in respect thereto to the jury under proper instructions. It was not a matter for plaintiff's counsel to argue to the jury in an opening statement with his own interpretation of the law.

It appears on reviewing the whole of the opening statement of the plaintiffs' counsel that it was prejudicial in its nature, that recitations as to what the testimony would show were false as to certain material matters, and that they were either known or should have been known to be so at the time made. Such statements were not conducive to an atmosphere of fairness.

This court has held that when a timely motion for

mistrial is made when remarks of counsel in the closing argument to the jury are improper and prejudicial, the motion should be sustained unless the error appears to be cured by the admonition of the court. See, Sandomierski v. Fixemer, 163 Neb. 716, 81 N. W. 2d 142; Buhrman v. Smollen, 164 Neb. 655, 83 N. W. 2d 386. We think the same rule should be applied to remarks made in an opening statement. Where counsel in an opening statement positively states that the evidence will show certain material facts when he knows or should have known no such evidence is to be produced, the court, on the failure of such proof becoming apparent and proper objection being made thereto, should admonish the jury to disregard such statements or, if an admonition be deemed inadequate to cure the error, declare a mistrial.

The only admonition given by the court in the cause was contained in the ninth instruction wherein it was stated: "You will disregard all statements of counsel on either side unless the same are supported by the evidence. You will draw no conclusions or inferences from questions propounded by counsel, nor from offers of evidence to which objections were sustained by the court, and you will not consider any evidence which was stricken out by the court." The instructions were given after a 5-day trial. It is not specifically related to and does not refer to the opening statement. The instruction was given in conjunction with those referring to the reception and introduction of evidence. Many objections, discussions, and rulings had been made during the trial. It refers to counsel on either side and could easily refer to matters growing out of the reception of evidence only. Under the circumstances, we do not consider the admonition in the instruction sufficient to remove the prejudice arising from the errors discussed in the opening statement of counsel. The motion for new trial should therefore have been sustained by the

trial court and the judgment must be reversed for that reason.

Inasmuch as this decision will require a new trial in district court, it will be necessary to consider other objections of the defendant. The defendant assigns error to the trial court in admitting the evidence of Karl A. Witt as to the valuation of the premises taken from the plaintiffs. Witt stated he was a home builder and developer. His operations had primarily been for residential purposes although he and his associates were developing commercial land also.

His testimony given by deposition is quite voluminous. He testified concerning a plan for developing a shopping center in the general area of the plaintiffs' land. About 6 months after the condemnation, Witt purchased the remaining lots of the plaintiffs in Block 17 together with other lots which they owned in Block 15. He requested the plaintiff when he purchased his lots to keep it quiet but the plan got out when the deed and mortgage in this transaction were filed for record. The purchase did not include the buildings and a contract with the plaintiff provided that the plaintiff was to remove them and clear the lots and foundations.

A considerable portion of his testimony concerned a great many lots acquired or sought to be acquired by him and his associates with whom he had a working agreement. Most of the lots were contained in blocks to the north and west of the land here taken. Some had been purchased by Witt and others by his associates or both of them together. Options were secured or were attempted to be secured on some of them. In some instances there was only an oral agreement to purchase which he felt sure would be honored. The dates of purchase, the prices, and descriptions of most of the lots so acquired or sought to be acquired were not given.

He stated that although the coming of the interstate had not greatly raised values about the area, he did suppose that it had an effect on where they wanted to

locate the shopping center, and that the coming of the highway had speeded up the process of development which they had been anticipating for several years. The lots which they had purchased were in a residential zoned area and he had made no application to have them zoned commercially but had talked it over many times with persons at the planning director's office. He anticipated no difficulty in having the zoning changed because the comprehensive plan showed the area suitable for commercial purposes.

He stated with regard to some of the lots purchased that he considered the houses thereon worthless to him for the purposes for which they were procured. He said, "I'm after a specific thing." When asked if he had an opinion of the value of the plaintiffs' land on or about September 1, 1961, he stated: "That would have to be conditioned by what the party was going to do with them. If they were going to develop them like we have developed." On being asked what his opinion was, over objections followed by a motion to strike the answer, he said: "Oh, oh, I think, knowing what I know about what our plans are, we could have conceivably given eighty thousand dollars for that piece." He stated that when he purchased the plaintiffs' property, he might have had to pay more because of what he and his associates had already bought. He had purchased certain lots in Block 15 in 1960 for $200 a lot. He further testified as follows: "Q. Now your thinking, on your thinking of these values, you are thinking in light of your—what you would use the property for, is that correct? A. That's right. * * * Q. Now when you think of market value do you think what the property would sell to anyone? A. No. Q. Rather than what you would pay for it you are not thinking in those terms? A. That's right. Q. You are thinking in terms of what their value is to you. A. Me or to anyone else that thinks of a specific thing." He stated he knew of no other person who wanted the property that he had pur-

chased for any particular thing except he knew two oil companies who were interested in filling stations since the acquisition of land for the location of the highway. He supposed he would not have bought the plaintiffs' land if he had not known of the highway.

In Sump v. Omaha Public Power Dist., 168 Neb. 120, 95 N. W. 2d 209, this court laid down the following rules: "In a condemnation proceeding under the power of eminent domain the measure of damages where land is not taken is the difference in the reasonable market value before and after the damaging, taking into consideration the uses to which the land was put and for which it was reasonably suitable.

"In determining the reasonable market value of land in a condemnation proceeding it is proper to consider the condition of the property and all its surroundings, as well as its adaptability for any particular use. If it has a peculiar adaptation for certain uses which adds to its value the owner is entitled to the benefit of it.

"Evidence as to the value of property for a particular use is not competent. Its adaptability for certain uses may be considered only in determining the reasonable market value of the land at the time it is taken or damaged.

"The evidence as to the adaptability of property for certain uses must be limited to uses reasonably anticipated in the immediate future.

"The adaptability for uses which may be considered must be so reasonably probable and so reasonably expected in the immediate future as to affect the reasonable market value of the land at the time the land is taken or damaged."

In the cited case the opinion stated: "In this respect one witness was permitted to testify that the corner was worth $14,000 as a filling station site. Sump was permitted to state that the corner was worth $15,000 as a filling station site. The evidence was erroneously admitted. The rule is: Witnesses should not be allowed to

give their opinion as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted. The condition of the property and all its surroundings may be shown as well as its availability for any particular use. If it has a peculiar adaptation for certain uses, this may likewise be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. Where these facts and circumstances are shown, the only question as to value that is properly in issue is the reasonable market value at the time the property is taken or damaged. Langdon v. Loup River Public Power Dist., supra; Lynn v. City of Omaha, 153 Neb. 193, 43 N. W. 2d 527; Medelman v. Stanton-Pilger Drainage Dist., 155 Neb. 518, 52 N. W. 2d 328. We conclude that the trial court erred in admitting the evidence as to the value of the property for use as a filling station." See, also, Leffelman v. City of Hartington, 173 Neb. 259, 113 N. W. 2d 107; Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

It is quite obvious from the testimony of Witt that he was considering the value of the premises to him for the particular purpose of a shopping center involving the acquisition of these lots to be used in connection with other lands in the area. He not only states that he was basing value of the premises for this special purpose, and his opinion was so conditioned, but he expressly states that the market value was not being considered. His answer that "they" might conceivably have given $80,000 for the premises in view of all his evidence is not a true indication of market value at the time of taking. The opinion of the witness should have been excluded under the circumstances.

The last assignment of error claimed by defendant concerns the overruling by the trial court of the motion to strike the opinion of value of the witness William R. Swearingen because it alleges his testimony shows his opinion included a noncompensable element of damage.

The witness stated on cross-examination that he included with his estimate of damage the fact that rubble and machinery would be in the surrounding area during the construction period thereafter. Further he stated he could not segregate the amount he had allowed for this element from total amount of damages to which he had testified. Without any attempt to give a résumé of the evidence concerning the location and character of the lots and the damages thereto, it may here be said that the testimony seems to cover the elements of special damage to the five lots not wholly taken. The sole question appears to be whether the temporary existence of machinery, debris, and confusion in the course of construction in the neighborhood after the taking is a proper element of damage. The evidence covers in detail the damage to these lots by reason of the denial of access to the alley to the rear thereof. It may be said that they all front on Nance Avenue to which the access from four of them is not disturbed and the fifth is limited to 25 feet of the 30-foot front. There is no evidence which indicates that work is to be done on Nance Avenue.

The contention of the defendant is that the inconvenience or annoyance arising from the presence of machinery and rubble during construction are damages suffered by the public generally in the vicinity of the work and hence are not compensable.

The general rule is set out in 29 C. J. S., Eminent Domain, § 112, p. 924, as follows: "Injuries to land, no part of which is taken, or to the residue of a tract of which a part is taken, which will entitle the owner to compensation are such as specifically affected him, and not such as are suffered by the community generally or such as differ only in degree, and not in kind, from those suffered in common by the people of the whole neighborhood, although a landowner, part of whose land is taken, is entitled to recover for all damages to his remaining land, whether special or shared by the public generally, provided they flow from the appropria-

tion; and the mere fact that an injury is common to all property in the vicinity will not bar recovery by one whose property is specially injured."

The plaintiffs refer to Gledhill v. State, 123 Neb. 726, 243 N. W. 909, and to which we may add Snyder v. Platte Valley Public Power & Irr. Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154, in both of which this court allowed recovery of special damages to the property. Both cases involved damages when water was backed upon the land of the plaintiffs. There appears no question but what the land itself was physically damaged although the damage was temporary.

In Snyder v. Platte Valley Public Power & Irr. Dist., *supra,* there is an extended discussion of the change of the law with respect to damages in condemnation actions caused by the constitutional change by which recovery was permitted for both the taking or damaging of property. These cases, however, do not alter the rule that the injuries must be such as specifically affect the injured premises and not such as are suffered by the community generally.

In Rath v. Sanitary District No. One, 156 Neb. 444, 56 N. W. 2d 741, where part of the premises were taken by the condemner, this court stated in the opinion: "Defendant's tendered instruction No. 1, taken from Lowell v. Buffalo County, 119 Neb. 776, 230 N. W. 842, read: 'The court instructs the jury that a landowner cannot ordinarily recover on account of a lawful public improvement, damages that he suffers in common with the public generally, though his loss may be greater in degree.' In that connection, defendant argued that such refusal was prejudicial error. We conclude otherwise. The statement as an abstract proposition of law is correct and ordinarily should be given. However, as held in Lowell v. Buffalo County, supra, as a part of the same syllabus: 'but this rule does not prevent the recovery of special damages.'

"Viewed in that light, we have carefully examined all

of the instructions given by the trial court which specifically limited and confined plaintiff's recovery, if any, entirely to prescribed special damages pleaded by him and supported by competent evidence. We therefore conclude that the failure to give defendant's requested instruction No. 1 was not prejudicially erroneous. Atchison & N. R. R. Co. v. Boerner, 45 Neb. 453, 63 N. W. 787." See, also, Fougeron v. County of Seward, 174 Neb. 753, 119 N. W. 2d 298, where the same rule was followed, although unlike Rath v. Sanitary District No. One, *supra,* no part of the premises of the plaintiff was physically taken or damaged.

From the brief of the plaintiffs it appears their counsel does not distinguish between special damages that may be recoverable as an invasion of rights appurtenant to lands condemned and inconveniences which are suffered and must be borne by the public at large without compensation. We have been cited to no cases which attempt to differentiate these problems and find few cases that discuss them. However, in City of Los Angeles v. Geiger, 94 Cal. App. 2d 180, 210 P. 2d 717, the California court, in considering the question, stated: "While the recovery of damages is not limited to instances of actual invasion of the land itself, yet damages can be justified only by evidence of direct physical disturbance of *an existing right,* either public or private, which the owner possesses in connection with his property and which gives an additional value to it, and by evidence that through such disturbance he has sustained a special damage with respect to his property or to a right appurtant thereto different from or in excess of that suffered by the public in general." (Emphasis supplied.)

In the present cause the plaintiffs seek to recover for the temporary presence of road working machinery and rubble which is to take place after condemnation upon the land of the State and which arises during the construction of the improvement only. The locality in

which this highway is to go is shown by plats and aerial photographs herein to be in the thickly populated urban area. The temporary inconvenience complained of is one common to all residents and occupants of the vicinity. Evidence of such elements of damages borne in common by the neighborhood should not be admitted upon retrial.

Because of the misconduct of counsel in the opening statement, the judgment must be reversed and the cause remanded for a new trial in accordance with this opinion.

REVERSED AND REMANDED.

WHITE, C. J., dissenting.

I respectfully dissent from the majority opinion in this case. I have no disagreement with the factual statement in the majority opinion. I do disagree with the interpretation and conclusion of prejudicial error. This is the first civil case, as far as I am able to discover, that a judgment has been reversed for error in an opening statement. The matter of the conduct of counsel in an opening statement, under our trial procedure, rests in the sound discretion of the trial judge who is there and is able to evaluate the situation much better than an appellate court reading the cold record from hindsight. He sustained the objections of the State to the alleged improper statements and properly admonished the jury in an instruction to disregard all statements of counsel unless supported by the evidence. It is my opinion that such a situation reacts to the detriment of counsel much more than to his benefit in the final result of most cases.

This is a condemnation case. The county court appraisers awarded $59,000, and the jury here awarded $63,500. The only witness for the State on valuation placed the damage at around $40,000. The State does not even assign as error the excessiveness of the verdict. The damage here was awarded for the actual taking of a substantial number of lots, with a portion of them having operating business buildings on them, all ad-

mittedly of high value. Our cases admit and allow an extremely wide area and depth of proof as foundation for valuation. The range extends to a showing of every possible inconvenience or disadvantage and the showing of every actual, available, or reasonably prospective use of property. The most that can be said of counsel's statement is that it overstated as to valuation and quality of proof the evidence that he actually offered. For ex· ample, counsel's reiterated statements as to expected proof of "net income," in the opening statement is attacked, and yet the actual gross rentals were introduced in evidence and the witnesses took into consideration the income-producing use of the property in fixing valuation. There could have been, in my opinion, no confusion in the jurors' minds, in this respect, because no evidence of "net income" was introduced, even though it could be a proper foundational element for valuation. I know of no better aid to the determination of market value of business property than capitalization of rental income. There is no suggestion of error in the reception of evidence in this respect or in the comments of counsel in the final argument in this area. Again, counsel in the opening statement did overstate the valuation figures that the "independent" witnesses did testify to. They did, however, testify as to valuations well beyond the range of the actual jury verdict of $63,500. In the light of this situation, it is difficult to believe that the failure of the witnesses to testify to a figure beyond what they actually testified to could have resulted in prejudicial error in the verdict that it actually returned. We would have to assume that the jury disregarded the witnesses' actual evidence and were in some way deluded into following the overstatement as to figures on valuation made in the opening statement.

The valuation testimony actually introduced touched on the general areas that it was claimed were overstated in the opening statement. No assignment of error is made as to the reception of evidence except as to

points that were not mentioned in the opening statement. I think it is significant that there were no objections to the final argument in the case and apparently there was no reiteration of the claimed overstatements by counsel at this vital point in the trial.

There may be cases where prejudicial statements may be made in the opening statement. But, in this case, it is difficult to believe that after a long trial the jury, on deliberation, would start drawing comparisons between the actual evidence (and proper arguments) and the opening statement, and then turn and rely in their final determination on a remembrance of some of the over-statements of counsel in opening. I can find nothing in the result or verdict reached that would indicate this. Section 25-853, R. R. S. 1943, provides: "The court in every stage of an action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

I feel further that the effect of our opinion is to imply that we are holding counsel to compliance with a strict rule that requires his proof to exactly conform to his opening statement, when many times he cannot know specifically what the evidence on a given point will be, and it may vary or change, or a witness may not testify according to information previously acquired by investigation. Perhaps it should be, but the exigencies and pressures of trial work do not permit preparation and investigation that assures the proof will exactly conform to the opening statement. Its purpose is to furnish an understandable picture and structure of a case and a party's theory and what he *expects* to prove. I cannot believe that the variances recited in this case caused any prejudice.

Further, we should not set up procedural rules by which we inject a collateral issue in a case, and by which a litigant may be deprived of his verdict and suffer a

reversal as a result of an adverse holding on an issue foreign to the merits, namely, a comparison of the admissible proof with the common overstatements of counsel in an opening statement.

The majority opinion states: "* * * the court, on the failure of such proof becoming apparent and proper objection being made thereto, should admonish the jury to disregard such statements or, if an admonition be deemed inadequate to cure the error, declare a mistrial."

I cannot believe that this is the rule in any jurisdiction. It requires the court to make a comparison between the evidence and the opening statement during the progress of the trial, determine whether counsel knew or should have known that such evidence would not be produced, and then communicate the result of such comparison to the jury. Such a rule places an undue burden upon the trial court, introduces collateral issues into the trial, and creates confusion in the minds of the jurors.

Judge Spencer authorizes me to say he joins in this dissent.

Carter, J., concurring.

The dissent filed in the instant case supports a legal philosophy with which I cannot agree. It has been my belief that a proper administration of justice requires that litigants are entitled to a fair and impartial trial of the issues in dispute. This implies fairness and impartiality throughout the trial and imposes duties and responsibilities upon the court, legal counsel, and the parties. Such duties and responsibilities of the lawyer in the conduct of litigation were well stated in Chicago, B. & Q. R.R. Co. v. Kellogg, 54 Neb. 127, 74 N. W. 454. We there said: "These cases establish that a lawyer charged with the conduct of a case is invested with certain rights and charged with certain duties. It is his duty to use all honorable means to protect his client's interests; and in argument, within the limits of the evidence and the legitimate deductions and inferences to

be drawn therefrom, he may not be limited, but may comment on the conduct and credibility of witnesses and parties to the suit. On the other hand, he must act honorably and fairly with the court, opposing counsel, the jury, and the parties to the litigation. But he may not, in his conduct of the case or in his argument to the jury, go outside the record, the evidence and the legitimate inferences deducible therefrom, and ask questions, make statements or arguments for the purpose of misleading and prejudicing the jury; and if he does so, such misconduct, if properly preserved in the record and assigned here, will cause a reversal of the judgment procured."

Counsel for plaintiff in the instant case made assertions in his opening statement to the jury which he knew or should have known to be false. He made statements that were immaterial and had no relation to the issues being tried. He made statements which could be supported only by incompetent evidence. There is but one reason why counsel should engage in such conduct,— to enhance his chances for a verdict or to obtain a more favorable verdict at the hands of the jury. I submit that such conduct was prejudicial to the rights of the State and that he cannot be permitted to retain for his client the benefits of a judgment so obtained.

The dissenting opinion agrees that the opening statement was improper but asserts that it did not constitute prejudicial error. It states that there was no prejudicial error for the reason that the jurors could discern the true facts without difficulty and it would not therefore prejudice them in arriving at a fair and impartial verdict. Such a position is no more valid as to an opening statement than it is to the admission of improper and prejudicial evidence over objection or to improper and prejudicial arguments of counsel to a jury duly excepted to. A fair and impartial trial does not begin at the close of plaintiff's opening statement.

It has long been the rule that when the record shows

that evidence was wrongfully admitted it will be considered prejudicial unless it is affirmatively shown not to have affected the result of the trial. Singles v. Union Pacific R.R. Co., 174 Neb. 816, 119 N. W. 2d 680; Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170. The rule is no different when prejudicial assertions are made in the opening statement. There is nothing in this record to show that it did not accomplish the purpose intended. When the assertions of counsel in an opening statement recite incompetent, immaterial, exaggerated, and false recitations of facts that are so prejudicial as to permeate the whole trial, a mistrial should be declared or a new trial granted. In a situation such as we have here, a general instruction to the jury to disregard facts not supported by evidence will not separate the wheat from the chaff, and remove the prejudice from the minds of the jurors. A verdict based in part on such misconduct will not be permitted to stand.

The dissent implies that the conduct of counsel is controlled by the trial court and that this court should not interfere with that court's discretion. Ordinarily this is true, but when the misconduct of counsel is such as to destroy the very basis of a fair and impartial trial, it is not only the province of this court, but its duty as well, to take the steps necessary to insure the injured party a fair and impartial trial.

I submit that the fact the verdict rendered finds support in the evidence is not a controlling factor in dealing with misconduct of counsel. Nor does the fact that a proper argument was made to the jury cure the error or mitigate the misconduct. The effect upon a jury of such misconduct is speculative, but unless it is affirmatively shown to be nonprejudicial, this court must assume that it had an adverse effect. Proper conduct in the trial of cases will avoid situations such as we have here. While this court dislikes to set aside judgments on such grounds, it will not hesitate to do so when its

effect is to deny the adverse party a fair and impartial trial. Under such circumstances, this court will not permit a verdict to stand which has been brought about by such means. The adverse party is not required to suffer judgment against him when it is obtained by such tactics. To give approval to such a judgment is to encourage misconduct of counsel in judicial trials and to inspire others to do the same. This would lead to an intolerable situation to which this court should not and, I hope, never will become a party.

MESSMORE and YEAGER, JJ., join in this concurrence.

BOSLAUGH, J., concurring.

I concur in the decision that the judgment of the district court should be reversed and the cause remanded for a new trial. However, I believe that the decision should be based upon all of the errors discussed in the opinion of the court and not solely upon the misconduct of the counsel for the plaintiffs.

A part of the opening statement made by the attorney for the plaintiffs was improper, but the objections which were made to it were sustained. Although it would have been appropriate for the trial court to have given an admonition to the jury at that time, a cautionary instruction was given later. In my opinion the record in this case does not show that the overruling of the defendant's motions for a mistrial was an abuse of discretion such as to require that the judgment be reversed.