MARY ULDRICH, APPELLEE, V. SANITARY DISTRICT NO. 1, LANCASTER COUNTY, APPELLANT.

FILED JUNE 8, 1926.  No. 24921.

**Waters:** DRAINS: ACTION FOR DAMAGES. Where as a part of a general drainage project of a sanitary district, which contemplates the deepening and straightening of a natural watercourse by constructing a large number of cut-offs of varying lengths, and during the progress of the work the first cut-off constructed caused the natural stream flowing through the plaintiff's land to be overflowed in times of flood water, *held*, that an action brought to recover damages to the land as a whole before the project is completed is premature, unless it appears that the project when completed will not relieve the situation complained of and that the district will not, in all probability, adopt some other method of relieving the conditions creating the damages.

APPEAL from the district court for Lancaster county: MASON WHEELER, JUDGE.  *Reversed.*

*Peterson & Devoe*, for appellant.

*C. J. Campbell* and *Harry R. Ankeny, contra.*

Heard before MORRISSEY, C. J., ROSE, DAY, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

DAY, J.

Plaintiff brought this action to recover damages claimed to have been sustained by her by reason of alleged negligent and wrongful acts committed by the defendent in the construction of a ditch, known as cut-off 47B, of defendant's drainage project, resulting, as she claims, in the creation of a nuisance permanently damaging her lands and destroying her crops therein.

The petition sets out three causes of action: The first relating to permanent injuries to the land, arising from flooded conditions which plaintiff claims reduced the market value of her land as a whole. The second and third causes of action were for damages alleged to have been sustained for loss of crops in the years 1923 and 1924. The trial resulted in a verdict and judgment in favor of the plaintiff for $7,000 on her first cause of action, $633.60 on her second cause of action, and $1,008 on the third cause of action, making a total of $8,641.60. From this judgment defendant has appealed.

Pending the appeal a stipulation was entered into between the parties permitting the defendant to satisfy the judgment in so far as it related to the second and third causes of action, without prejudice to the right of the defendant to have the court determine the issue presented in the first cause of action. The stipulation also contained a clause relating to the taxation of costs, contingent upon the determination of the issue in this court.

As the record now stands there is but one question presented for our determination, and that is the right of plaintiff to recover future or prospective damages to her land by reason of the construction of the ditch in question.

For many years the question of adequate and proper drainage of Salt creek valley in and adjacent to the city of Lincoln has been a matter of great public concern. To aid in solving this question the defendant was duly incorpo-

rated as a sanitary drainage district under the laws of this state, possessing, among other things, the power of eminent domain, the authority to construct and maintain ditches, drains and canals, and to provide an adequate sewage system for the entire district.    The district included the city of Lincoln, several suburban towns, and thousands of acres of land drained by Salt creek, a natural water-course which carries large quantities of water, especially in the rainy seasons.

The land through which Salt creek flows is comparatively level, and the stream, containing many bends and curves and subject to frequent overflow, is very sluggish.    To obviate this difficulty and afford better sanitation, the trustees of the district adopted a comprehensive scheme of drainage of the entire valley which in the main contemplated the straightening and deepening of several tributary streams to Salt creek and also the straightening and deepening of the channel of Salt creek for a distance of more than 13 miles.    One of the cut-offs embraced within the scheme is known as cut-off 47B, which originates at a point in section 27 and extends in a northeasterly direction through a part of of section 26 where it connects with the original channel a short distance south of the plaintiff's land.    This cut-off is 3,730 feet long.    The plaintiff is the owner of the S. E. ¼ and the E. ½ of S. W. ¼ of section 23.    The accompanying diagram shows the course of the stream through the plaintiff's land, the cut-offs and a few of the proposed cut-offs embraced within the project.

In furtherance of the general plan the district, in 1920, constructed cut-off 47B.    It then commenced straightening the channel at the extreme eastern boundary of the district, known as cut-off 23, being approximately 8 miles from cut-off 47B.    From the eastern boundary of the district the cut-offs have been constructed up-stream and at the time of the trial a number of such cut-offs had been completed.

It is claimed by the plaintiff that by diverting the waters through cut-off 47B the flow of water is so accelerated as to cause an overflow in flood times, in the main channel of

Uldrich v. Sanitary District.

Salt creek at the point A shown in the diagram, causing many acres of plaintiff's land to be submerged and to deposit thereon large quantities of silt and debris, resulting in permanent injury to the land.    It is the contention of the defendant that when the project is completed the flow of water in the natural stream through the plaintiff's land will be so accelerated as to relieve her land from overflow caused by water deposited in the main channel by the construction of cut-off 47B.

The rule established in this jurisdiction is that, where an injury is permanent, the plaintiff may recover in one action, future or prospective as well as past damages, but where the nuisance is of temporary, recurring or removable character, prospective or future damages are not recoverable. In *Beatrice Gas Co. v. Thomas*, 41 Neb. 662, where this same principle was involved, this court said:

"We think the rule is stated correctly in 2 Wood, Nuisances (3d ed.) sec. 869, as follows: 'Where the damages are of a permanent character, and go to the entire value of the estate

affected by the nuisance, a recovery may be had of the entire damages in one action.    Thus, in an action for overflowing the plaintiff's land by a mill-dam, the land being submerged thereby to such an extent and for such a period as to make it useless to the plaintiff for any purpose, the jury were instructed to find a verdict for the plaintiff for the full value of the land.    So, too, when a railroad company by permanent erections imposed a continuous burden upon the plaintiff's estate, which deprived the plaintiff of any beneficial use of the portion of the estate so used by it, it was held that the whole damage might be recovered at once; but where the extent of a wrong may be apportioned from time to time, and does not go to the entire destruction of the estate, or its beneficial use, separate actions not only may but must be brought to recover the damages sustained.' "

In *Omaha & R. V. R. Co. v. Standen,* 22 Neb. 343, it was held:

"Where a nuisance is a continuing one, in consequence of which damages are sustained, a recovery is limited to damages which may have accrued before the action is brought, and one action is not a bar to a second action brought for damages thereafter sustained."

While it is true that there has been considerable delay in the completion of the project adopted by the board of trustees, we think it is clear that they have in good faith been proceeding to carry out the general plan of drainage adopted by the board.    A large portion of the delay was caused by the necessity of using the funds for the construction of the disposal plant.

The construction of cut-off 47B is but a part of a general project.    When completed it may, and some of the evidence tends to show that it will, entirely obviate the difficulty complained of by the plaintiff.    The overflow of the plaintiff's land occasioned by the construction of the ditch does not at all times permanently destroy the use of the land.    It would be entirely unjust to allow the plaintiff to recover $7,000 as a permanent injury to the land if it

should turn out when the project is completed that no permanent injury exists.

It would seem that the general rule, applicable to cases of permanent injury, would not arise upon a partial construction of an improvement producing an injury, unless it appears that the completion of a contemplated project will not relieve the situation complained of and that the district will not adopt some other method of relieving the conditions creating the damages.

Although an expert has expressed an opinion that the ditch as located with its present capacity will not prevent the injuries complained of; it is not to be assumed in advance that some other method may not be adopted by the district to obviate the difficulty, rather than submit to periodical suits or damages based upon the theory of maintaining a continual nuisance. The plaintiff has recovered damages for the loss of crops for the years 1923 and 1924 and the same remedy is open to her for recurring damages for subsequent years, if any there be.

In view of the entire record, we are quite convinced that the plaintiff is not entitled to recover for permanent injury to the land at this time. From what has been said, it follows that the judgment for permanent damages to the land upon the issue presented in the first cause of action is not sustained by the evidence and the judgment upon that issue should be reversed. In accordance with the stipulation, the plaintiff shall pay the cost of the bill of exceptions and the costs accrued in this court.

The judgment upon the first cause of action is

REVERSED.