HARRY F. RATH, APPELLEE, v. SANITARY DISTRICT NUMBER ONE OF LANCASTER COUNTY, NEBRASKA, APPELLANT.

56 N. W. 2d 741

Filed January 16, 1953.   No. 33211.

*Max Kier* and *Donald L. Brock*, for appellant.

*Perry & Perry*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

On April 7, 1951, Sanitary District Number One of

Lancaster County, Nebraska, a public corporation, commenced proceedings in the county court to condemn certain described lands for right-of-way necessary to straighten Salt Creek drainage channel, a part of their works, between 10th and 14th Streets in Lincoln. Appraisers were duly appointed and qualified, who, on April 30, 1951, after inspection and hearing, assessed "the damages which the owners of said land, and all persons interested therein have sustained by reason of the taking and appropriating of said lands for public improvements * * *." With regard to the land here involved, belonging to Harry F. Rath, they reported that: "For the taking and appropriating of Lots Seven (7) to Twelve (12), inclusive, Block Seven (7), Riverside Addition to Lincoln, Lancaster County, Nebraska, inclusing (sic) crops, we assess all damages in the sum of *$1200.00, * * *."* Thereafter, on May 9, 1951, such owner filed notice of appeal, to wit: "TO SANITARY DISTRICT NUMBER ONE (1) OF LANCASTER COUNTY, NEBRASKA:

"You are hereby notified that Harry F. Rath is not satisfied with the award of the County Court of Lancaster County, Nebraska, as to Lots Seven (7), to Twelve (12), inclusive, Block Seven (7), Riverside Addition to Lincoln, Lancaster County, Nebraska, and is appealing to the District Court of Lancaster County, Nebraska." On the same day he filed an appropriate appeal bond. Thereafter, by permission of the district court, he filed a petition on appeal wherein he appeared and was appropriately docketed as plaintiff, and Sanitary District Number One of Lancaster County, Nebraska, was appropriately docketed as defendant. They will be hereinafter so designated.

So far as important here, plaintiff's petition on appeal substantially alleged that he not only owned Lots 7 to 12, inclusive, in Block 7, the land actually taken, but also owned Lots 1 to 3, inclusive, in Block 7, together with Lot 12 and the north half of Lot 11 in Block 8, all

in Riverside Addition, which property was all owned and operated as one contiguous unit or tract, having great and productive value as such; that by reason of the taking of Lots 7 to 12, inclusive, and by reason of structures, ditch embankment, and other works erected or to be erected by defendant, together with the severance of said Lots 7 to 12, inclusive, from plaintiff's remaining lots or land, he had suffered substantial damages for which he prayed judgment.

The lawful right of defendant and legality of the proceedings to condemn and appropriate the land taken were never an issue. The sole issue was the amount of just compensation to be paid by defendant within Article I, section 21, Constitution of Nebraska, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor."

In that regard, defendant's answer denied generally; denied that plaintiff's property was contiguous or ever used as a single unit, but alleged that it consisted of three independent tracts, separated by streets and alleys; and also alleged that the lots taken were of small value. It prayed that plaintiff's recovery should be limited to the fair and reasonable value of the land taken as of April 7, 1951. Plaintiff's reply, insofar as important here, was a general denial.

The issues so made were submitted to a jury, whereupon plaintiff was awarded a verdict with judgment thereon for $3,000. Defendant's motion for new trial was overruled, and it appealed, assigning substantially: (1) That the verdict was not sustained by sufficient evidence and was contrary to law; (2) that the trial court erred in denying defendant the right to open and close and in failing to limit the issue to the fair and reasonable value of the land taken; and (3) that the trial court erred in giving and refusing to give certain instructions. We conclude that the assignments should not be sustained.

In that regard, defendant also assigned generally, without any particularity, that the trial court erred in receiving incompetent evidence over objections of defendant. However, that contention is not contained in the statement of questions involved, or supported by any authority, or argued in the brief, and it will not be further discussed.

At the outset we dispose of defendant's contention that plaintiff's notice of appeal of itself limited the issues to the fair and reasonable value of the land taken. The answer is twofold. First, concededly there was no statute requiring the filing of a notice of appeal in such cases until May 21, 1951, when section 76-716, R. S. Supp., 1951, became effective. Second, the notice, when considered in the light of defendant's original application and the appraisement, was all-inclusive and sufficient in any event. Atchison & N. R. R. Co. v. Boerner, 34 Neb. 240, 51 N. W. 842, 33 Am. S. R. 637.

We next dispose of defendant's contention that the trial court should have permitted it to open and close. Concededly plaintiff owned the land taken, and the only issue was just compensation. In such a situation, "* * * the general rule is that the burden of showing the damages which the landowner will suffer rests on him, while it is for the petitioner to show matters which tend to reduce or mitigate the damages." 29 C. J. S., Eminent Domain, § 271, p. 1257.

Section 25-1107, R. R. S. 1943, specifically provides in part: "(3) The party who would be defeated if no evidence were given on either side must first produce his evidence; the adverse party will then produce his evidence. * * * (6) The parties may then submit or argue the case to the jury. In argument, the party required first to produce his evidence shall have the opening and conclusion." In that connection it has long been the rule that: "The party to an action upon whom rests the burden of the issues is entitled, on the trial of the cause, to open and close the evidence; also the arguments

to the jury. Hickman v. Layne, 47 Neb. 177, followed."
Brumback v. American Bank of Beatrice, 53 Neb. 714,
74 N. W. 264. Defendant's contention has no merit.

We turn then to the case on the merits. An exam-
ination of the record discloses that the following is with-
out dispute or is supported by competent evidence which
if believed was amply sufficient to sustain the verdict
and judgment. The situation was illustrated by numer-
ous photographs and plats. The jury also viewed the
premises, as requested by defendant. The old, wide and
deep Salt Creek channel, draining floodwaters through
Lincoln from west and southwest to northeast, turned
rather sharply to the right at 10th Street. It then
turned gradually back left and crossed 14th Street,
after which it turned left again rather sharply to the
northeast. Floods had eroded the channel at the turns
and elsewhere, damaging the county bridge over 14th
Street, exposing a large city sewer, and threatening
other structures east of the channel. In avoidance there-
of, plans were worked out between defendant and the
county to move and reconstruct the bridge about 550
feet north of its former location and straighten the chan-
nel in conformity therewith between 10th and 14th
Streets and on east to the old channel again, thus short-
ening it about 270 feet. To do so, insofar as important
here, defendant took all of Lots 1 to 6, inclusive, all of
Lots 7 to 10 and the south half of Lot 11, inclusive, in
Block 8, clear up to the south lot line of the north half
of Lot 11 belonging to plaintiff. Defendant also took all
of Lots 7 to 12, inclusive, in Block 7, clear up to the south-
east corner of plaintiff's Lot 1 in said block.

A plat of Riverside Addition was filed on October 11,
1886. Such plat shows an alley running north and south
across the center of Block 8; shows 13th Street running
north and south between Blocks 7 and 8; and an alley run-
ning east and west across the center of Block 7. Although
such alleys and street have never been vacated, they
have never been either opened or used as such since

the plat was filed 66 years ago. As a matter of fact, there is a fence line down the center of the platted alley in Block 8, and the north half of platted 13th Street, although crossed by a power line, has been planted to a peach orchard for 10 or 12 years. In that connection, it appears that defendant has now occupied all of the alley in Block 8 up to plaintiff's south lot line; all the south half of 13th Street; and most of Emerson Street south of plaintiff's land actually taken by defendant.

Plaintiff's land was originally shaped somewhat like a closed hand with the fore and middle fingers pointing toward the east. Lot 12 and the south half of Lot 11 in Block 8 formed the fingers. Plaintiff's modern five-room house, chicken coop, and garage are located thereon. Lot 12 faces north lengthwise on Virginia Street, with access to it from 14th Street, about 160 feet east. West of Lot 12 and the south half of Lot 11 is platted 13th Street, upon which is the peach orchard heretofore mentioned. Lots 1, 2, and 3, Block 7, extending lengthwise north and south, lie directly west thereof. All face north on Virginia Street. Lots 12, 11, and 10 respectively lie directly south of them, west of which lie Lots 9, 8, and 7. All of such lots face Emerson Street on the south. The platted alley in Block 7 is between such lots and Lots 1, 2, and 3.

Plaintiff was a municipal contractor owning cars, special trucks, tractors, air compressors, bunk trucks, and related equipment used in such business. After investigation to determine that neither platted 13th Street nor the aforesaid alleys had ever been opened and used as such, a fact undisputed and readily observable, plaintiff, dealing through a named real estate operator, purchased all of the property as one transaction in January 1950, for a consideration of $3,900. He received three separate deeds from the same grantors respectively to Lot 12 and the south half of Lot 11, Block 8, Lots 1, 2, and 3, and Lots 7 to 12, inclusive, Block 7, all signed January 30, 1950. In addition, he received a quit-claim deed from

other grantors to Lots 1, 2, and 3, Block 7, which, under the circumstances, was necessarily executed at a later date.

Plaintiff purchased the property because it was accessible to 14th Street, was suitable for the storage of his equipment, and useful as an acreage, all in one unit or tract, and because it was located in a neighborhood where his operations would not be offensive to the public. He immediately went into possession of all the property, moved his equipment thereon, and established a business office in one room of the house, where he and his wife temporarily lived. He then modernized the five-room house, raised the ground level around the premises, and generally improved and modernized the property, expending about $2,000 therefor, not counting his own labor. He rented part of the house for a time, after which he, his wife, and step-daughter have continuously occupied all of the house and property as their home. When plaintiff moved on the property Lots 7 to 12 had been planted to corn and plowed. Thereafter plaintiff has not planted crops there, but has mowed and paid for mowing the weeds thereon. All of the land was low but level, with productive soil which had not been flooded for at least 25 or 30 years. Lots 12 and the south half of Lot 11 drain to the west and north toward Virginia Street.

Whereas the old, wide and deep Salt Creek channel was formerly about two blocks from plaintiff's property, now the north edge of the new channel is concededly but 80 feet from his south lot line, which is only 150 feet from the center line of the channel. Defendant's own engineer testified that the edge of the channel should properly be not less than 100 feet from plaintiff's property, and that if plaintiff's Lot 12 and the south half of Lot 11 had not had improvements upon them, necessitating the expenditure of more funds, they possibly would have purchased those also. A dike is constructed north of and along the channel to within 30 feet of plain-

tiff's lot line to prevent overflow from the channel going north over plaintiff's property. There is evidence that the banks of the channel will doubtless slough off some, that rains will wash the dirt from such dike across plaintiff's property, and that an overflow would inundate it. In such a situation it cannot be said as a matter of law that plaintiff's action was premature or that his injuries and damages were not permanent but merely prospective, temporary, recurring, or removable in character. In that respect, Uldrich v. Sanitary District No. 1, 114 Neb. 641, 209 N. W. 501, relied upon by defendant, is distinguishable upon the facts. In that connection, instruction No. 8 given by the trial court in the case at bar, about which no complaint is made, properly protected defendant's rights with regard to such matters.

Although conflicting, there is ample competent evidence in the record to sustain the verdict and judgment unless, as a matter of law, plaintiff was not entitled to recover consequential damages for depreciation in the value of his remaining land by severance and the construction of structures, embankment, and earthworks aforesaid, as argued by defendant. We conclude that such contention has no merit. In that event, the applicable rule is: "The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." Crawford v. Central Nebraska Public Power & Irr. Dist., 154 Neb. 832, 49 N. W. 2d 682.

In that connection, this court said in Schulz v. Central Nebraska Public Power & Irr. Dist., 138 Neb. 529, 293 N. W. 409, quoting from Chicago, R. I. & P. Ry. Co. v. O'Neill, 58 Neb. 239, 78 N. W. 521: " 'The jury in fixing the damages sustained by a landowner in consequence of the appropriation, or injury, of his property for a public use may take into account every element of annoyance and disadvantage resulting from the improve-

ment which would influence an intending purchaser's estimate of the market value of such property.'"

As stated in 29 C. J. S., Eminent Domain, § 111, p. 922, citing Nebraska cases and construing a constitutional provision like Article I, section 21, Constitution of Nebraska: "A compensable damaging or destruction, under these provisions, includes injury necessarily resulting from construction of works for public use and from subsequent maintenance and operation thereof, and has been held generally to include all damages or injuries arising from or determined to constitute an exercise of the right of eminent domain which cause a diminution in the value of private property, whether this results directly to the property or is but an interference with the right which the owner has to the legal and proper use of the same."

In Atchison & N. R. R. Co. v. Boerner, *supra*, this court held: "Where several contiguous town lots are used and treated by the owner as one property, in estimating his damages occasioned by the appropriation by a railroad company of one of such lots and parts of two others for its right of way, the injury to the entire property should be considered, although the petition filed by the railroad company for the appointment of commissioners only describes the lots across which the road is located."

In 18 Am. Jur., Eminent Domain, § 270, p. 910, it is said: "In determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test, and if a tract of land, no part of which is taken, is used in connection with the same farm, or the same manufacturing establishment, or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, railroad, or canal."

As stated in 2 Lewis, Eminent Domain (3d ed.), § 698, p. 1207: "Under the rule that, where part of a tract is taken, damages or benefits to the entire tract may be considered, it sometimes becomes a question of some difficulty to determine what is to be regarded as the entire tract. In general it is so much as belongs to the same proprietor as that taken, and is continuous with it and used together for a common purpose. Thus the whole of a farm is one tract, although it may consist of several government subdivisions, or lie partly in different counties, or have its parts separated by a highway or railroad or canal, and though the fee of the canal is in the state." See, also, McGinley v. Platte Valley Public Power & Irr. Dist., 133 Neb. 420, 275 N. W. 593.

In 29 C. J. S., Eminent Domain, § 140, p. 984, it is said: "The mere platting of a tract of land on a map into lots or blocks does not constitute such a division of it into separate lots that the owner's damage must be limited to the particular lot a portion of which, as shown on the map, is actually taken."

As stated in the annotation to 6 A. L. R. 2d at page 1207, citing Nebraska authorities among others: "Mere paper divisions are usually to be disregarded. Where the remaining land for which damages are claimed is divided from the land taken, or partly taken, only by a lot line, or where the land as a whole has been platted into lots, blocks, streets, and alleys, no corresponding change having been made in the physical condition or legal ownership of the property, the entire tract will be treated as a single parcel."

Defendant, in its argument and citation of authorities, contended that the property here involved was vacant, unoccupied, unused, and separated by streets and alleys; therefore it was composed of three separate tracts as a matter of law and there should have been no recovery for severance. The evidence in this record will not sustain such contention. Therefore, the authorities cited are distinguishable upon the facts. Under the evidence

here presented, it was a question for the jury to determine whether or not plaintiff's property was one contiguous tract entitling him to damages for severance therefrom.

In such situation the applicable rule is that ordinarily it is a question of law whether or not the property involved constitutes one contiguous unit or tract. "But where the doubt is factual, depending on conflicting evidence or on different views of the evidence, the court may submit the question to the jury under proper instructions." Annotation, 6 A. L. R. 2d 1207, which cites numerous cases supporting the aforesaid rule. The trial court appropriately submitted such issue to the jury in the case at bar.

We therefore conclude that the verdict and judgment were sustained by sufficient evidence, were not contrary to law, and that the trial court did not err in refusing to limit the issue to the fair and reasonable market value of the property taken. Such conclusion also disposes of defendant's objections that instructions Nos. 1, 2, 3, 4, and 5, given by the trial court, erroneously submitted issues of severance and consequential damages not supported by the law or any competent evidence. Such instructions properly submitted the issues presented by the pleadings and supported by competent evidence.

Defendant also complained that instruction No. 6 was prejudicially erroneous. Such instruction, after reciting plaintiff's claim that the property was one contiguous unit or tract, and defendant's contention that plaintiff's property consisted of three distinct tracts because separated by streets and alleys, said: "Relating to this matter, you are instructed that the question of whether the plaintiff has acquired a legal interest in, or whether the City of Lincoln has lost a legal interest in the streets and alleys, should not be considered by you in determining whether the property of the plaintiff was a contiguous tract and unit on April 7, 1951. The existence of streets and alleys in a tract does not conclusively

determine that it is not a unit or contiguous tract, nor does the non-use of the streets and alleys by the public determine that it is a unit or contiguous tract. A contiguous tract or unit is that which in general belongs to the same proprietor as that taken, and is continuous with it and used together for a common purpose." In the light of the evidence, other instructions, and authorities heretofore cited, we conclude that instruction No. 6 was not prejudicially erroneous. It simply stated the applicable rule, and in the light of that conclusion we find that the refusal of the trial court to give defendant's tendered instruction No. 4 was not prejudicial error.

Defendant's tendered instruction No. 1, taken from Lowell v. Buffalo County, 119 Neb. 776, 230 N. W. 842, read: "The court instructs the jury that a landowner cannot ordinarily recover on account of a lawful public improvement, damages that he suffers in common with the public generally, though his loss may be greater in degree." In that connection, defendant argued that such refusal was prejudicial error. We conclude otherwise. The statement as an abstract proposition of law is correct and ordinarily should be given. However, as held in Lowell v. Buffalo County, *supra,* as a part of the same syllabus: "but this rule does not prevent the recovery of special damages."

Viewed in that light, we have carefully examined all of the instructions given by the trial court which specifically limited and confined plaintiff's recovery, if any, entirely to prescribed special damages pleaded by him and supported by competent evidence. We therefore conclude that the failure to give defendant's requested instruction No. 1 was not prejudicially erroneous. Atchison & N. R. R. Co. v. Boerner, 45 Neb. 453, 63 N. W. 787.

For the reasons heretofore stated, we conclude that there was no error in the record prejudicial to de-

fendant, and that the judgment should be and hereby is affirmed.

AFFIRMED.