STATE HIGHWAY COMMISSIONER v. SNELL.

1. EMINENT DOMAIN—PROPERTY TAKEN—DESCRIPTION.

Description of land, required by statute to be given in determination of necessity and pleadings in condemnation action, is that of the property proposed to be taken, and not necessarily that of any property that might remain after the taking (CL 1948, § 213.174, as amended by PA 1962, No 22).

2. SAME—DESCRIPTION OF LAND—MEASURE OF DAMAGES.

Description of land proposed to be taken in condemnation proceedings, which defined the land to be taken by reference to a "tract A", did not require that proofs put in by the highway commission as to damages should be restricted to the effect of the taking only on "tract A", where "tract A" was adjoined by another tract of land belonging to same owner, divided from it by a railroad right-of-way.

REFERENCES FOR POINTS IN HEADNOTES

[1] 27 Am Jur 2d, Eminent Domain §§ 396, 505.
[2] 27 Am Jur 2d, Eminent Domain §§ 396, 427, 505.
[3] 27 Am Jur 2d, Eminent Domain § 315.
Unity or contiguity of properties essential to allowance of damages in eminent domain proceedings on account of remaining property. 6 ALR2d 1197.
Unity of ownership necessary to allowance of severance damages in eminent domain. 95 ALR2d 887.
[4] 27 Am Jur 2d, Eminent Domain §§ 315, 418, 506.
[5] 27 Am Jur 2d, Eminent Domain §§ 418, 506; 53 Am Jur, Trial § 824.
[6] 27 Am Jur 2d, Eminent Domain § 280.
[7] 27 Am Jur 2d, Eminent Domain §§ 419, 435.
[8] 27 Am Jur 2d, Eminent Domain § 421.
[9] 27 Am Jur 2d, Eminent Domain §§ 421, 425, 426.
[10, 11] 27 Am Jur 2d, Eminent Domain § 429.
[12] 27 Am Jur 2d, Eminent Domain § 380.
[13] 27 Am Jur 2d, Eminent Domain §§ 380, 506.
[14] 27 Am Jur 2d, Eminent Domain §§ 418, 506.
[15] 5 Am Jur 2d, Appeal and Error § 1009.

3. Same—Separate Parcel—Unity of Use.

Unity of use is the principal test in determining whether a tract of land, no part of which is taken, is a separate and independent parcel of land from one subject to taking by condemnation; the 2 tracts are not necessarily separate and independent even though they may be separated by a highway, street, alley, railroad, or canal or other body of water.

4. Same—Instructions to Commissioners.

Instructions by trial judge to commissioners in condemnation action that they might use a whole tract, divided by a railroad, or only the parcel on the side of the railroad where the taking occurred in determining damages using before and after valuations, held, correct.

5. Same—Instructions to Commissioners—Objections.

Objections must be made to instructions given by trial court to commissioners in condemnation case to preserve a claim of error on appeal (GCR 1963, 516.2).

6. Same—Damages—Cost of Development.

Damages caused by taking of real property by condemnation may not be measured by proofs of what development of the land would cost, together with proofs of the value of the land as developed, with the difference between the sums treated as the value of the land, because such method is speculative.

7. Same—Damages—Development of Land.

Refusal of trial court to permit detailed testimony concerning a service road to be constructed on part of land remaining after taking by condemnation, together with proposed lots to be served by the road, held, not error of which defendant landowner could complain.

8. Same—Damages—Partial Taking—Discharge of Water on Remaining Land.

Trial judge properly left for the determination of commissioners assessing damages in condemnation action the question whether highway improvements made on the parcel of land taken by condemnation would cause an additional discharge of water across defendant's remaining land, and the amount of damages sustained by such discharge, if proven.

9. Same—Water Drainage—Evidence—Admissibility.

Testimony of appraiser for defendant landowner in condemnation action, concerning water drainage from the parcel taken

over the remaining lands of defendant, which was of a general nature and not connected with the improvement and taking of defendant's property was inadmissible.

10. SAME—COMPARABLE LAND SALES—ADMISSIBILITY.

Comparable land sales used by appraisers in condemnation actions are not evidence; they are tools used by the appraisers to arrive at their estimate of a fair price and value for condemned property.

11. SAME—COMPARABLE LAND SALES—ADJOINING COUNTY.

Comparable sale of land near parcel which is the subject of a condemnation action, but in adjoining county, *held*, proper under the circumstances.

12. SAME—CONSTITUTIONAL LAW—CONDEMNATION PROCEEDING—FUNCTION OF JUDGE.

Trial judge acting in a condemnation case has the same powers and duties as in other civil cases, because the Constitution has eliminated the treatment of condemnation as an inquisitorial matter (Const 1963, art 10, § 2).

13. SAME—TRIAL JUDGE—QUESTIONS TO WITNESS.

Questions asked by trial judge of witness in condemnation action for clarification purposes, which were proper and did not result in any prejudice to the defendant, were not in excess of trial judge's authority in a condemnation action under the Constitution (Const 1963, art 10, § 2).

14. SAME—INSTRUCTION—EASEMENT PURPOSES.

Refusal of trial court to instruct commissioners in condemnation action that they should consider that land taken in fee had value for easement for city waterline *held*, not error, where condemning authority already owned a right-of-way easement over the land taken which included the easement for a city waterline.

15. COSTS—PUBLIC QUESTION—CONDEMNATION FOR HIGHWAY.

No costs are allowed on appeal in proceedings to condemn land for State highway purposes, where a public question is involved.

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 March 8, 1967, at Grand Rapids. (Docket No. 1,558.) Decided November 27, 1967. Leave to appeal denied March 20, 1968. See 380 Mich 762.

Proceedings by the State Highway Commissioner for condemnation of various parcels of land for highway improvements in Grand Rapids and Parks Township, Kent County. Commissioner's award of damages to defendant Ethel S. Snell confirmed by the circuit court. Defendant Snell appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Louis J. Caruso,* Assistant Attorney General, and *Roger D. Anderson,* Special Assistant Attorney General, for the State Highway Commissioner.

*Miller, Johnson, Snell & Cummiskey (Robert J. Miller, Stephen C. Bransdorfer,* and *Boyd A. Henderson,* of counsel), for defendant.

Holbrook, J. This is an appeal by defendant from a condemnation award for damages in Kent county circuit court, incident to the improvement of M 11, also known as US 16, bypass on the south side of Grand Rapids. The defendant has raised 6 questions on this appeal, viz: (1) In determining a condemnation award in a "partial take" is it prejudicial error for the State to base its case on 2 separate parcels of land, only one of which is subject to the taking? (2) Did the defendant have the right, to include testimony as to the cost of a projected service road for the purpose of showing the valuation of the residue after the taking? (3) Did the defendant have the right to be awarded damages for water to be discharged on her property as the result of the highway department's improvements? (4) Can the State include testimony concerning a parcel of land in another county for the purpose of showing valuation considerations in regard to the subject par-

cel? (5) Does the judge presiding over the condemnation proceedings have the right to ask of witnesses questions which are substantive and of an inadvertently prejudicial nature? (6) Should the court have instructed the commissioners to consider the value of the subsurface of the land taken in computing the compensation award?

The pertinent facts appear to be as follows:[1] Defendant, Mrs. Ethel S. Snell, is the owner of property fronting on the south side of 28th street (M 11) for a total of 867 feet, between Breton avenue and a railroad overpass immediately to the west.

In the early part of 1963, the Michigan State highway department, plaintiff herein, decided to improve the highway (M 11) by widening the traveled portion thereof from 42 feet to 59 feet to accommodate 5 lanes of traffic, and to eliminate access to the road from defendant's property for the 329 feet just east of the railroad overpass.

The plaintiff proposed to purchase from defendant for this improvement the fee title to approximately 43,808 square feet of land bordering on the highway and in addition the taking of the westernmost 329 feet access from defendant's property to the highway by constructing thereon a fence 4 feet high. The plaintiff prior to this proposal owned a right-of-way for highway purposes covering all of the land in question, the subject of the fee taking.

The defendant refused to sell to plaintiff and plaintiff proceeded to condemn. The notice of hearing on necessity, the determination of necessity, and all pleadings in the condemnation proceedings filed in the circuit court for Kent county describe the proposed taking and then add the description of a parcel of land referred to as "tract A" which is as follows:

---

[1] See sketch illustration, next page.

[1] A sketch illustration:

"All that part of the northeast ¼ of section 16, T6N, R11W, Paris township, Kent county, Michigan, lying northeasterly of Chesapeake and Ohio Railroad right-of-way, except the east 214.5 feet of the north 203 feet thereof, also except commencing at the northeast corner of said section 16; thence north 87 deg 27′ west 1099.39 feet; thence south 2 deg. 33′ west 50 feet to the point of beginning; thence south 22 deg 34′ east, 250.60 feet to the easterly right-of-way line of the Pere Marquette Railroad Company [sic]; thence northwesterly along said railroad right-of-way line 369.25 feet to a point 50 feet southerly of the north line of said section 16; thence south 87 deg 27′ east, 184.76 feet to the point of beginning."

Defendant also owns in addition to "tract A" of approximately 10.1 acres, land immediately to the south of approximately 25 acres. The two properties of defendant are separated by land 100 feet wide owned by the C & O Railroad in fee simple and used for railroad purposes.

The court commissioners held their hearings in February of 1965. The State based its valuations on appraisals made by Mr. Melvin M. Fuerch and Mr. Clive Fisher. The State's appraisers made their appraisals based upon the total property owned by defendant in the area and considered the same a unit. They were not informed as to the description of "tract A" mentioned in all the condemnation proceedings. These appraisals which set the damage at $100 were allowed into evidence by the court over the objections of the defendant.

The land owner based her valuation on two appraisals made by Mr. Joseph Zandstra and Mr. Charles R. Fuller. These appraisals were confined to the before and after values of "tract A" in reference to the taking. These appraisals, which set the damages at $23,850 and $20,000 respectively, were admitted by the trial court in evidence and submitted to the court commissioners for consideration.

The commission awarded for the value of de-
fendant's damages the sum of $4,500. Defendant
objected to the confirmation of the award for sim-
ilar reasons to those set forth in this appeal. The
circuit court confirmed the award November 18,
1965, after denying defendant's objections in an
opinion dated October 13, 1965.

It is defendant's contention that it was prejudicial
error to allow the State to base its appraisals on 2
separate parcels of land only one of which is claimed
to be subject to the taking.

The testimony of Mr. Fuerch, one of the State's
witnesses, reveals the following:

*"By Mr. Miller.   *   *   **
*"Q.* But it's physically separated; you couldn't use
them as an integrated part, the south and north
land?

*"A.* Physically it's separated, yes. Topography-
wise it's two different types of property also."

Now it is true that defendant owns approximately
35 acres of land fronting on the north on 28th street
(M 11) and on the east by Breton road, and that the
C & O Railroad owns in fee a strip 100 feet wide
that runs diagonally through the acreage in a north-
westerly and southeasterly direction. The defendant
claims that the only property affected by this taking
is the land north of the railroad for 2 reasons: first,
that the State has defined this portion of defendant's
land in its determination of necessity and in its con-
demnation pleadings; and second, that the land to
the north is actually a separate piece of property
by reason of the railroad's fee title causing such
separation. As to the first reason we turn to the
statute concerning condemnation proceedings and
find that the controlling description is required to
be contained in the determination, viz: CL 1948,
§ 213.174, as amended by PA 1962, No 22 (Stat Ann

1965 Cum Supp § 8.174), which states: "Such deter-
mination shall also describe the property desired and
shall give the name of each person interested there-
in, so far as known to the commissioner or commis-
sioners making the determination." It is evident
from reading that the description required to be
given is that of the property proposed to be taken—
not necessarily any property that might remain after
the taking. The property on the north side of the
railroad is used for a residence and a place to wash
commercial vehicles. There were also on the land
3 or 4 frame garages. The entire 35 acres is zoned
industrial. The appraisers both for the plaintiff
and the defendant stated that the highest and best
use of the land north of the railroad was for com-
mercial development, except that at least one ap-
praiser for each of the parties stated that the south
part of the land north of the railroad could be best
developed as industrial land. The State's appraisers
testified that the highest and best use of the prop-
erty south of the railroad would be for industrial
purposes. The defendant's appraisers did not con-
sider the property south of the railroad. If we con-
sider the present use of the property, which is most-
ly vacant land and all classified as industrial land,
and that part of the land north of the railroad as well
as all of that south of the railroad is best suited for
industrial use, the fact that there is a railroad be-
tween the parcels does not appear to prevent the
entire tract being considered as a unit for ascertain-
ing damages for condemnation. In *State Highway
Commissioner v. Englebrecht* (1966), 2 Mich App
572, it is stated on p 574:

"Plaintiff argues that these factors are insufficient
as a basis for determining that the two parcels con-
stitute a tract from which the taking occurred be-
cause they do not meet 2 of 3 recognized tests util-
ized for this purpose; namely, uniformity of owner-

ship in both properties and unity of use. The other test, contiguity, is clearly met."

See, also, *Raff* v. *Sanitary Dist No 1* (1953), 156 Neb 444 (56 NW2d 741).

In 27 Am Jur 2d, Eminent Domain, § 315, pp 134, 135, it is stated:

"It is a fundamental principle that where a portion of a parcel of land is taken for the public use, the owner is entitled to recover for the injury to the remainder of that parcel only, and cannot recover for injury to separate and independent parcels of land which he may happen to own in the same neighborhood. According to the prevailing view, in determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test, and if a tract of land, no part of which is taken, is used in connection with the same farm, or the same manufacturing establishment, or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, street, alley, railroad, or canal or other body of water." (Footnotes omitted.)

Even if we were to consider the parcels separated by the railroad as separate units, in view of the fact that plaintiff's appraisers appraised the land south of the railroad at exactly the same amount before and after the taking, it is difficult to understand how defendant could have been prejudiced. It is also important to note that the State's appraisers appraised separately the property of defendant north of the railroad and the property of the defendant south of the railroad.

The trial judge instructed the commissioners that they might use the whole tract both north and south

of the railroad or the parcel north of the railroad in determining damages using the before and after valuations.

Such instruction, in our opinion, properly expresses the law. In any event, there were no objections to these instructions by defendant, and error, if any, as to the instructions was not preserved. GCR 1963, 516.2; *Welsh* v. *Ohanesian* (1966), 378 Mich 24.

Defendant next asserts she should have been permitted to show the necessity for constructing a service road for purposes of showing value of residue after the taking. Although the court sustained the objection to going into details concerning a service road, Mr. Zandstra, defendant's appraiser, did testify that the cost of the service road would be $3,500 and that defendant would lose the 30-foot frontage, valued at $4,500, used in a service road.

Defendant cites the case of *In re Petition of the City of Detroit for a Park Site* (1924), 227 Mich 132 as authority for her position on this point. Therein, the trial judge allowed testimony to show that the highest and best use would be for platting purposes. The court did not allow the jury to consider the various costs involved in platting and developing the property. The court stated on p 138 as follows:

"The rule seems to be well settled in accordance with the instruction given by the trial judge and in this connection we quote from *Pennsylvania, S.V. R. Co.* v. *Cleary,* 125 Pa St 442, 451 (17 Atl 468, 11 Am St Rep 913):

" 'It is proper to consider for what purpose it may be used to advantage, in order to determine for what price it will sell. It may be saleable as a site for the erection of a hotel, a factory, a dwelling house or a wharf, but it is not proper to lay before the jury proof of what the hotel or other structure would cost, together with proof of the value of the lot with such

structure upon it, and treat the difference between these sums as the value of the lot. Such a method would be speculative and fanciful. Equally improper is evidence showing how many building lots the tract under consideration could be divided into, and what such lots would be worth separately. It is proper to inquire what the tract is worth, having in view the purposes for which it is best adapted, but it is the tract, and not the lots into which it might be divided, that is to be valued.' "

The trial judge in allowing the testimony of the cost of the service road and the loss of frontage and its value but restricting further testimony concerning proposed lots to be serviced thereby did not commit prejudicial error of which defendant can complain.

Defendant in her third question maintains she is entitled to be recompensed for any water to be discharged on her property as the result of the highway department's improvements. Defendant's counsel was allowed to explore the matter at great length with all of the witnesses who testified and although there was testimony that water may be discharged on defendant's property by reason of the highway improvements it was also testified that the water would be discharged by being placed in the natural water course on defendant's land, legally used for drainage. The facts were properly before the court commissioners and the trial judge did not take from the determiners of the facts the right to award damages for such water being discharged on defendant's property if proven. A careful review of the testimony fails to disclose certainly that any water would be placed on or flowed over defendant's property in addition to that to which the land was already subjected prior to the taking. Defendant refers the court to the testimony of Mr. Zandstra, as follows:

"*By Mr. Miller.*

"*Q.* Mr. Zandstra, there was some cross-examination by Mr. Anderson regarding the water problem. You heard Mr. Koster's testimony that the highway at the eastern end toward Breton road was widened from 42 feet to 57 feet in width—

"*Mr. Anderson.* I think it was 59.

"*A.* 59 feet.

"*By Mr. Miller.*

"*Q.* Do you recall that testimony?

"*A.* Yes.

"*Q.* For that particular area 275 feet east of the storm drain that funnels the water onto the Snell property there is a much larger expansion of highway, is there not?

"*A.* Yes.

"*Mr. Anderson.* Objection, if the court please, I am objecting at this time to any claims made with regard to water or curbing or anything else that is not related to this take.

"*The Court.* I will sustain the objection unless it is related to the take.

"*Mr. Miller.* Your Honor, it's specifically related to the take and the cases all show—and I can support it with case authority which I will supply the court after intermission if you would like—to the effect that where snow or water is expunged on the property by virtue of the improvements in accordance with the engineering exhibits, that this is a factor that we have a right to recover in determining our damages to the highest and best use.

"*The Court.* All right. I will sustain the objection at this time subject to the—the answer has been recorded."

It was shown from the testimony that the widening of Breton road together with private developments such as a black topping of the Shell gas station neither of which were connected with the improvement in question might increase the amount of water flowing into the so-called Snell drain. How-

ever, there was no showing or offer of testimony to
indicate that the improvement by the highway de-
partment in any manner increased the flow of water
into the drain, adversely affecting defendant's prop-
erty.

Mr. Koster, a witness for the State, testified in
part as follows:

"*Q.* Whose responsibility is to clean out that
drainage ditch and keep the water flowing and where
it's supposed to go?

"*A.* That would be the highway department's re-
sponsibility.

"*Q.* And if the water does not flow along there
the way it's supposed to then this is part of your
job to see that it's cleaned out?

"*A.* To see that it does flow, that's correct.

"*Q.* But you have received no complaint from any-
body that this water does not drain off the way it's
supposed to?

"*A.* Not yet we haven't.

"*Q.* Did Mrs. Snell or any representative of hers
ever complain to your department concerning water
not flowing along the drain or overflowing her land?

"*A.* If she did I am not aware of it."

Defendant failed to offer any testimony indicating
that there was difficulty with the drainage of de-
fendant's property as a result of the improvement
or the taking.

The proffered testimony of Mr. Zandstra concern-
ing water drainage was of a general nature and was
not connected up with the improvement and taking
of defendant's property and therefore was inadmis-
sible. The trial court in its instructions did not pre-
clude the court commissioners from awarding water
drainage damages and no prejudicial error resulted.

Defendant's fourth claimed error has to do with
testimony concerning property in an adjoining coun-

ty.  Mr. Melvin M. Fuerch, a witness for the State,
testified in part as follows:

"*Q.* All right.  Were there any other sales of a
special type like this that you considered in deter-
mining after value?

"*A.* Yes, there was a sale of a piece of land out in
Ottawa county just beyond the Kent county line in
Jenison where the actual taking from a piece of
property for access rights and restricting of access
to this piece of property by the highway department
from a main arterial highway which subsequently
sold for a higher and better use than what the land
had been put to prior to the erection of the fence and
restricting of access.  The property had access from
three points.  However, the main arterial road ac-
cess was restricted and the property subsequently
sold from all indications for a higher and better use
and at a value that didn't indicate any depreciation
or diminution in value because of this restricted ac-
cess.

"*Mr. Miller.* Your Honor, I think that under the
Supreme Court decisions that we can hardly say
that in determining comparability that a parcel of
land in Ottawa county could come within this con-
ception of comparability for purposes of Mr. Ander-
son's argument.

"*The Court.* Isn't it being used for a different
purpose? It's being used for a use purpose rather
than for value purpose, I think, isn't it?  Would it
be eligible from that standpoint?

"*Mr. Miller.* Well, for what is Mr. Anderson pro-
posing to use this for?.

"*Mr. Anderson.* Well, for purposes of showing
that where access is limited the value or the utility
of the property is not destroyed.

"*Mr. Miller.* It seems to me the point of whether
it is or is not hinges on whether these are in a neigh-
borhood or in the same city or adjoining areas, not
in Ottawa county.  A lot of other forces play in the

market place as far as values and damages are concerned in Ottawa county than take place in Kent county.

"*The Court.* I would think it would be a matter for the commissioners to decide as to the value of such testimony. You may proceed.

"*By Mr. Anderson.*

"*Q.* Mr. Fuerch, I realize you didn't do this at the time you appraised this property, but did you in the last few weeks—I mean in the last few days—make a further investigation of other property with restricted access limited to a certain part of the frontage?

"*A.* Yes, I did.

"*Q.* And did you take a photograph of a motel on Plainfield, north east?

"*A.* Yes, I did."

This property used as a comparison, although in Ottawa county, is close to the Kent county line and nearly directly west of defendant's property. It is in the general Grand Rapids area. Similar comparable tracts were used by the appraisers on the north side of Grand Rapids as well as on 28th street. The Ottawa county property was in the general area of Grand Rapids. The evidence was cumulative and dealt with land that was condemned which had a special condition which was also present in the instant case. We repeat what was stated in *State Highway Commissioner* v. *Schmidt* (1966), 3 Mich App 415, 419, 420:

"The comparable land sales used by the appraisers are not evidence; they are tools used by them to arrive at their estimate of a fair price and value for condemned property. The comparisons used by the appellant's appraisers were in the general vicinity of the land in dispute, as were the comparisons used by the appellee's appraisers. All land is unique. These were capable of, or suitable for, comparison

with the land involved, although not identical. Such comparisons do not exist in fact or in realty, but need interpretation by the party using said comparisons."

We conclude that the use by the appraisers of this comparable land was proper under the circumstances of this case.

Defendant contends in her fifth question that the trial judge erred by asking substantive questions of an inadvertently prejudicial nature of a witness.

The testimony in question was that of Hubert J. Koster, one of the State's witnesses which is as follows:

"*The Court.* Mr. Koster, before you step down, do I understand you have acquired this no access in three other areas in the vicinity?

"*The Witness.* Yes.

"*The Court.* And that is in two on the north side and another on the south side west of the railroad?

"*The Witness.* That's right, in each quadrant where the railroad crosses 28th street.

"*The Court.* Now, the purpose of the acquisition of this is because the highway under the overpass— is it an underpass or overpass?

"*The Witness.* Well, it makes no difference.

"*The Court (continuing).* Whatever it is, is only to be continued at four lanes width?

"*The Witness.* That's correct.

"*The Court.* And since you cannot have the fifth lane or the turn lane in the middle of a highway, this is to assure that nobody will make left turns?

"*The Witness.* That's correct. It's a safety measure.

"*The Court.* All right. Are there any questions by the commissioners?

"*Commissioners.* (Negative shake of the head.)"

These questions had to do with the reason for the improvement and the taking. Although it did

not affect damages, it did show some of the facts in connection with the improvement.

Defendant asserts that *In re Huron-Clinton Metropolitan Authority's Petition as to Belleville Lake Park Project* (1943), 306 Mich 373; *Department of Conservation* v. *Connor* (1947), 316 Mich 565; and *In re Parkside Housing Project* (1939), 290 Mich 582 are authority for the rule that the judge in a condemnation case is present only in an advisory capacity and should avoid unnecessary interruptions and comments and should confine himself to rulings on objections to the introduction of evidence. Const 1963, art 10, § 2 provides that in eminent domain cases "compensation shall be determined in proceedings in a court of record." We stated in *State Board of Education* v. *von Zellen* (1965), 1 Mich App 147, 159 as follows: "The Constitution of 1963 appears to have eliminated the matter of treating condemnation and eminent domain as an inquisitorial matter."

In the case of *State Highway Commissioner* v. *Gulf Oil Corporation* (1966), 377 Mich 309, Mr. Justice ADAMS stated on p 312 as follows:

"In commenting on the previous function of the jury as 'judge of law and fact,' Convention Delegate Erickson said:

" 'It is the desire and intent of the committee to correct this situation and have the judge act as such in condemnation cases with the same powers he has in other civil matters.' 2 Official Record, Michigan Constitutional Convention (1961), p 2581."

We hold that the authorities cited by defendant do not reflect the present law. In view of the 1963 Constitution and the General Court Rules 1963, and the cases interpreting them, we conclude that the circuit judge now has the same powers and duties in condemnation cases as in other civil cases. The

questions asked by the trial judge of the witness in the instant case for clarification purposes were proper and did not result in any prejudice to the defendant. *Murchie* v. *Standard Oil Company* (1959), 355 Mich 550.

Defendant's sixth question asserts that error was committed by the trial judge in failing to instruct the commission to consider the value of the subsurface of the land taken in computing the compensation award. A State's witness, William O'Connor, on cross-examination testified as follows:

"*Q.* Why was that removed?

"*A.* Well, the big reason that there was any change at all in there was that the city of Grand Rapids at the same time the highway department had their construction through this area, put a water main down the south side of 28th street from the first street to the west of the grade separation—I forget the name of the street now—down to Breton road and then north on Breton road.

"*Q.* In other words; in what area—would you come here and point out where this water main has been constructed?

"*A.* Just immediately south of the curb area along 28th. street.

"*Q.* Could you designate for me? Is this the curb line that runs here (indicating)?

"*A.* I believe it is, from what I can see here.

"*Q.* And you say that there has been a water main constructed immediately south of that?

"*A.* Yes, that's right.

"*Q.* By the city of Grand Rapids?

"*A.* Right.

"*Q.* But not by the highway department?

"*A.* That's right. * * *

"*Q.* But do you know or do you not know of your own knowledge whether there are any trees that

have been felled and left on the Snell property that is partially shown in this picture?

"*A.* If there were any it wasn't the highway department that felled and left the trees.

"*Q.* Who would it have been?

"*A.* If trees had been removed, I would say that it was the city of Grand Rapids in the construction of their sewer or water main down the south side of the road. That would be out beyond our construction limits.

"*Q.* But if they did it in the area where you had taken the fee title, it would be your property, is that correct?

"*A.* That's right.

"*Q.* And if they took it it would be with your permission, would that be correct?

"*A.* With the highway department permission, yes.

"*Q.* They wouldn't do it without the highway department permission, would they?

"*A.* No, they would not.

"*Q.* And so that if they did it and left those trees on the Snell property wouldn't the highway department be responsible by virtue of having allowed them to take it?

"*A.* I would imagine, yes."

The pertinent part of defendant's requested instruction reads as follows:

"In considering the valuation problem and the difference in value before and after the 'take' you should consider and give weight to the fact that the fee title to the property acquired by the petitioner was subject only to easements for highway purposes and that it had value for other easement purposes, such as, but not limited to, a City of Grand Rapids water line."

The trial judge instructed the court commissioners in the following language:

"Now, in considering the valuation problem and the difference in value before and after the take, you should consider and give weight to the fact that the fee title to the property acquired by the petitioner here was subject only to easement for highway purposes, and it had value to the landowner for various other purposes."

The instruction given was not incorrect inasmuch as the reference in defendant's requested instruction referred to the city of Grand Rapids' water line that was placed after the taking when the State had the right to give permission to the city to place it beneath the State's highway. The city water line could not specifically, under the facts in the case, be an element of damage to defendant.

The instruction given by the court was not objected to in compliance with GCR 1963, 516.2 and such claimed error is therefore not now reviewable.

Affirmed. No costs, a public question being involved.

FITZGERALD, P. J., and BURNS, J., concurred.